Argued and submitted February 4, 2011, affirmed on petition and cross-petition
June 27, 2012

AMALGAMATED TRANSIT UNION, DIVISION 757,
*Petitioner*
*Cross-Respondent,*

*v.*

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON,
*Respondent*
*Cross-Petitioner.*

Employment Relations Board
UP6205; A142045

282 P3d 2

Susan L. Stoner argued the cause and filed the briefs for petitioner-cross-respondent.

Keith M. Garza argued the cause for respondent-cross-petitioner. On the brief was Jana Toran.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

_____
* Brewer, J., *vice* Rosenblum, S. J.

682

ORTEGA, P. J.

## ORTEGA, P. J.

This judicial review proceeding arises out of an omnibus unfair labor practices complaint by petitioner Amalgamated Transit Union, Division 757 (ATU) against Tri-County Metropolitan Transportation District of Oregon (TriMet). Although the Employment Relations Board resolved a number of unfair labor practice claims in the administrative proceeding below, only two of the board's rulings are at issue on judicial review. First, ATU seeks review of the board's ruling dismissing ATU's unfair labor practice claim that TriMet violated ORS 243.672(1)(e) by unilaterally imposing a change to the Customer Service Policy and Procedures (CSI policy). In dismissing that claim, the board concluded that ATU had failed to meet its burden to show the status quo that existed prior to changes that were made to the policy in 2005, and ATU now challenges that conclusion. Second, TriMet cross-petitioned for judicial review, challenging the portion of the board's order that directed TriMet to reduce the discipline given to "Doe"[1] after concluding that TriMet had committed an unfair labor practice during the disciplinary process. We affirm on the petition and the cross-petition.

We begin with a brief overview of the procedural facts. ATU filed an omnibus complaint alleging multiple unfair labor practices by TriMet. Among those claims, ATU alleged that TriMet violated ORS 243.672(1)(e) by unilaterally imposing changes to the CSI policy and that TriMet, in violation of ORS 243.672(1)(g), used an investigatory report in the process of disciplining Doe that it should not have used. After ATU amended the complaint several times, an administrative law judge (ALJ) held an evidentiary hearing over the course of several days. Thereafter, the parties filed written closing arguments and post-hearing motions. The ALJ issued a decision, recommending that the board dismiss ATU's claim based on the CSI policy changes as untimely and that the board find that TriMet's use of the investigative report in the disciplinary process was an unfair labor practice

---

[1] The parties referred to the disciplined employee as "Doe" throughout the proceeding. We continue that practice in the interest of consistency.

and direct that the investigative report be removed from Doe's personnel file and not used in any disciplinary matter.

The parties filed objections to the ALJ's decision with the board. After briefing and argument, the board issued an order determining that TriMet had committed three violations of the Public Employee Collective Bargaining Act (PECBA), ORS 243.650 to 243.782, and dismissed the remainder of ATU's complaint. As relevant to this judicial review proceeding, the board concluded that ATU had failed to establish the status quo that existed before the 2005 changes to the CSI policy and accordingly dismissed that claim. The board also determined that TriMet had committed an unfair labor practice when it used a document in violation of a written agreement with ATU during an employee disciplinary process. Accordingly, the board ordered TriMet to remove the document from Doe's personnel file, refrain from using the document in future disciplinary proceedings, and rescind the discipline that had been imposed on Doe. We review each of those decisions in turn and affirm both decisions of the board.

## I. ATU'S PETITION FOR JUDICIAL REVIEW

We begin with the legal framework that governs ATU's claim that TriMet violated ORS 243.672(1)(e) by unilaterally changing the CSI policy. Under ORS 243.672(1)(e), a public employer commits an unfair labor practice if it "[r]efuse[s] to bargain collectively in good faith with the exclusive representative." That duty to bargain in good faith obligates public employers to negotiate with respect to mandatory subjects of collective bargaining. A public employer, such as TriMet, commits a *per se* unfair labor practice if it "institutes a unilateral change to the status quo involving a mandatory subject of bargaining * * *." *Lincoln Cty. Ed. Assn. v. Lincoln Cty. Sch. Dist.*, 187 Or App 92, 96, 67 P3d 951 (2003). The board, when evaluating if there has been a change to the status quo, compares the new provision to "either the existing collective bargaining agreement or, if that agreement does not address the disputed issue with sufficient clarity, to past practice." *Id.* Accordingly, in such cases, the board must first determine the status quo and, second, whether the employer unilaterally changed the status

quo. *Wy'East Education Assoc. v. Oregon Trail School*, 244 Or App 194, 200, 260 P3d 626 (2011). The party who claims that the status quo was violated carries the burden "to prove the existence of the past practice establishing the status quo." *Id.*; *see also Harris v. SAIF*, 292 Or 683, 690, 642 P2d 1147 (1982) ("[T]he burden of proof is upon the proponent of a fact or position, the party who would be unsuccessful if no evidence were introduced on either side.").

ATU's position during the administrative proceedings was that the 1996 CSI policy was the status quo and that TriMet unilaterally changed it in 2005 without bargaining. Based on the evidence presented in this case, the board made several factual findings about changes in the CSI policy between 1996 and 2005. Because those factual findings are important to our analysis, we quote them here:

"82.   In 1995, as a result of a highly publicized incident involving a bus operator's misconduct, TriMet sought input from ATU and members of the community to develop a new customer service policy. As a result of this process, TriMet adopted a 'Customer Service Policy for Routine Comments and Urgent Complaints' (CSI policy) in 1996.

"83.   In 1999, TriMet and ATU formed a workgroup to review the CSI policy. The CSI Workgroup included representatives from both parties and recommended a number of changes in the policy.

"Also in 1999, TriMet made changes in the CSI policy. ATU representatives were not consulted or notified about these changes.

"84.   The parties reactivated the workgroup in 2001, but were unable to agree upon any changes in the CSI policy.

"85.   In 2003, the workgroup met again to consider revisions to the CSI policy. On March 11, 2003, the parties reached agreement on a 'CSI Policy Side Letter' that described a one-year pilot program regarding non-urgent complaints. Although ATU asked that TriMet meet to discuss extending the side-letter agreement, TriMet refused to do so.

"86.   In February or March 2005, ATU Executive Director Schwarz realized that TriMet was no longer notifying ATU about urgent complaints. Although Schwarz considered this to be a major change in the CSI policy and

its implementation, he took no action regarding this matter.

"87. In August 2005, TriMet made a number of changes to the CSI policy. TriMet did not consult with ATU about these changes, and did not notify ATU that they had been made.

"88. In March 2006, a TriMet manager showed Schwarz a copy of the August 2005 CSI policy marked 'Draft.' Schwarz told ATU President Zullo about the policy. By letter dated March 10, 2006, Zullo wrote Hansen and demanded that TriMet negotiate about changes in the CSI policy."

To summarize, the board found that TriMet adopted a written CSI policy in 1996 and made various changes to that policy in the years between 1996 and 2005.

Based on those factual findings, the board concluded:

"In 1995-96, TriMet invited community and union input in formulating a new customer complaint (CSI) policy. TriMet made numerous changes in the policy between 1996 and 2005. At times, ATU representatives were part of a joint labor-management committee that reviewed the policy and recommended changes in it. Other times—in 1999 and 2005—TriMet altered the policy without consulting with the union. ATU alleges that TriMet unilaterally changed the *status quo* in violation of subsection (1)(e) when it altered the CSI policy in 2005.

"* * * Here, ATU failed to meet its burden to demonstrate the *status quo* that existed prior to the 2005 changes.

"The record includes a copy of the complete CSI policy adopted in 1995-96 and a copy of the complete policy in effect in 2005. The record also contains evidence of some changes in the CSI policy over the years, although the nature and extent of these changes is not clear. However, the record contains no complete copy of the pertinent provisions of the 1999 CSI policy, the policy in effect prior to the 2005 changes. We cannot tell from this record whether the changes about which ATU now complains occurred in 2005 or at some earlier time. If they occurred at an earlier time, TriMet did not change the *status quo* in 2005 as alleged. Thus, ATU failed to prove that TriMet changed the CSI policy as alleged. TriMet did not violate ORS

243.672(1)(e) when it adopted the 2005 changes to the CSI policy."

ATU argues that the board erred as a matter of law by requiring ATU to prove the existence of a 1999 CSI policy and by not "shifting" the burden of proving the existence of that policy to TriMet. ATU also contends that the board's factual finding that an "intervening" CSI policy existed between 1996 and 2005 is not supported by substantial evidence.

TriMet counters that ATU acknowledged that there were changes to the CSI policy between 1996 and 2005 and that ATU's own evidence reflected the existence of those changes. According to TriMet, because the evidentiary record before the board reflected intervening changes to the CSI policy, but did not reflect the substance of those changes, the board could not determine if the status quo consisted of the 1996 policy or the intervening changes. TriMet maintains that, because it was ATU's burden to prove the status quo, the board was correct to dismiss ATU's claim when it failed to do so.

We review the board's order to determine if the board correctly identified the applicable legal principles; we further review for substantial evidence and for substantial reason. ORS 183.482(8). However, before reviewing the board's order, we briefly discuss the burden of proof as it applies in the context of this case and as it relates to ATU's argument on review. As noted, ATU carries the burden of establishing the status quo. ATU, however, argues that, once it took the position that there was no intervening CSI policy between 1996 and 2005, the burden of establishing the existence of an intervening policy shifted to TriMet. We disagree.

When discussing the purpose of the burden of proof in other contexts, we have explained that

"[t]he purpose of the burden of proof * * * [is] to allocate the risk of nonpersuasion. In effect, assignment of the burden of proof is a way to declare which party loses if the evidence on an issue appears to be equally balanced or if the factfinder cannot say upon which side the evidence weighs more heavily.

"* * * * *

"Logically, the allocation of the burden of proof has its greatest relevance at the stage of the proceeding in which the record is developed and a factfinder initially resolves the issues in dispute. At that stage, the failure to produce evidence at all, or the failure of the evidence produced to persuade the factfinder, will be fatal to the party with the burden of proof."

*Marvin Wood Products v. Callow*, 171 Or App 175, 179-80, 14 P3d 686 (2000). Applying that discussion to our task on judicial review, we stated in *Bluemer v. Southland Industries*, 221 Or App 252, 259, 190 P3d 418 (2008):

"When judicial review is not *de novo*, whether the factfinder has correctly applied the burden of proof depends on whether the evidentiary record in support of the factfinder's findings is sufficient pursuant to the correct standard of review."

When viewed in the context of this case, the board's legal conclusion that ATU failed to establish the status quo is tied to ATU's failure to persuade the board as to what the evidence showed. That is, there is no dispute that it was ATU's burden to establish the status quo from which the board could then evaluate ATU's unfair labor practice claim. Although ATU introduced evidence and advanced a position that the 1996 CSI policy was the status quo, there was evidence in the record that called that position into question. The board found as fact that there were changes to the CSI policy between 1996 and 2005 but that there was not enough evidence to establish the exact parameters of those changes. In essence, based on the evidence, the board was not persuaded that the 1996 CSI policy was the status quo. As such, the board concluded that ATU, as the party with the burden to establish the status quo, failed to carry that burden. Accordingly, we reject ATU's contention that, once it advanced its position that the 1996 CSI policy established the status quo, regardless of evidence in the record to the contrary, it had fulfilled its burden.

Given that ATU retained the burden in this case, and the board concluded that ATU had failed to satisfy that burden, we must review the factual findings that form the basis of the board's conclusion—that there were intervening

changes to the 1996 CSI policy—for substantial evidence. "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c).

Although the record reflects some confusion as to the timing and substance of the changes made to the CSI policy in the intervening years, the record would allow a reasonable person to find that there were intervening changes to the CSI policy between 1996 and 2005. Accordingly, substantial evidence supports the board's findings of fact regarding the intervening changes. Because the board's findings of fact that there were intervening changes to the CSI policy were supported by substantial evidence, the board did not err in concluding that ATU failed to establish the status quo.

## II. TRIMET'S CROSS-PETITION FOR JUDICIAL REVIEW

TriMet, in its cross-petition, seeks review of the portion of the board's order that required TriMet to rescind the written warning given to its employee, Doe. The board concluded that TriMet committed an unfair labor practice when it impermissibly considered an investigative report prepared by ATU when disciplining Doe. To remedy that unfair labor practice, the board ordered TriMet to remove the offending document from Doe's personnel file, to refrain from using it in future disciplinary proceedings, and to rescind the discipline given to Doe as a result of the disciplinary process. TriMet does not dispute that it committed an unfair labor practice but instead argues that the board exceeded its authority when it ordered TriMet to rescind the discipline given to Doe. In short, TriMet argues that the discipline issued to Doe was the result of binding arbitration and that the board lacked the authority to rescind discipline in this context as a remedy for an unfair labor practice.

The relevant background facts are few. ATU and TriMet agreed to conduct separate investigations into potential wrongdoing by Doe in 2003. ATU agreed that it would provide TriMet with a copy of the written report of ATU's investigation on the condition that it would not be used for disciplining Doe. Although no discipline resulted from the

2003 investigation, TriMet again investigated Doe for misconduct in late 2004 and early 2005. During the second investigation, unbeknownst to ATU, TriMet considered the written report of ATU's investigation when deciding whether to discipline Doe and ultimately suspended him. ATU filed a grievance that, pursuant to the parties' collective bargaining agreement, led to arbitration.

At the arbitration, ATU learned that TriMet had used and relied on the report during the disciplinary process. In addition, the report apparently was introduced into the record at the arbitration. What effect, if any, the report had on the disciplinary process and arbitration is unclear, but ultimately the arbitrator reduced Doe's suspension to a written warning. ATU's later omnibus unfair labor practices complaint included a claim that TriMet's use of the ATU report in the disciplinary process violated ORS 243.672(1)(g) (providing that it is an unfair labor practice to violate the provisions of any written agreement with respect to employment relations) and requested that the board rescind Doe's discipline and prohibit TriMet from using the report in any future disciplinary proceedings related to Doe.

In the end, the board agreed, stating:

> "The parties' agreement prohibited TriMet from using ATU's 2003 investigation report in disciplining Doe. TriMet breached that agreement and violated [ORS 243.672](1)(g) when it considered this report in determining an appropriate level of discipline for Doe in 2004-2005, and again when it brought the report to the arbitrator's attention in the arbitration concerning Doe's discipline."

Accordingly, the board ordered TriMet to

> "remove the 2003 * * * report from any of Doe's personnel files and [refrain from] us[ing] that document in any disciplinary matter. Because TriMet considered the 2003 investigation report in disciplining Doe in 2004-2005, *we will also order that the written warning TriMet gave to Doe be rescinded,* and will order that TriMet not use or refer to this document in any future disciplinary action."

(Emphasis added.)

TriMet contends that the board lacked the authority to rescind the discipline, thereby setting aside the arbitration award. According to TriMet, ATU should have sought to set aside the arbitration award by means of a direct challenge to that award, not through an unfair labor practices claim. In support of its position, TriMet relies on the strong public policy in favor of arbitration and contends that the board's statutory powers do not reach so far as to allow the board to rescind an arbitration award. TriMet acknowledges that the legislature has granted the board remedial authority in ORS 243.676(2)(c), which provides that, where the board finds that a party has engaged in or is engaging in an unfair labor practice, the board shall:

> "(b)  Issue and cause to be served on such person an order that the person cease and desist from the unfair labor practice;

> "(c)  *Take such affirmative action,* including but not limited to the reinstatement of employees with or without back pay, as necessary to effectuate the purposes of * * * [PECBA] * * *."

(Emphasis added.) Nevertheless, TriMet contends that the remedial powers in ORS 243.676(2)(c) do not trump the strong policy favoring the finality of binding arbitration.

ATU responds that the board did not set aside the arbitration award, but rather only rescinded the discipline that TriMet had imposed. ATU, relying on ORS 243.766(3),[2] contends that the board has broad remedial authority to fashion an appropriate remedy when it finds an unfair labor practice and asserts that the board's actions fell within that authority in this instance.

We conclude that the board did not exceed its authority when it ordered TriMet to rescind the written warning. We begin by noting that the unfair labor practice claim focused on TriMet's use of the prohibited report during the disciplinary process and did not address the arbitrator's

---

[2] ORS 243.766(3) provides that the board shall:

"Conduct proceedings on complaints of unfair labor practices by employers, employees and labor organizations and take such actions with respect thereto as it deems necessary and proper."

reasoning or the arbitration award itself. Similarly, the board's order granting relief to ATU does not explicitly reference the arbitration award. Further, when the specific remedy challenged by TriMet is considered in the context of the other relief granted by the board, it is clear that the board's relief aimed to remedy TriMet's unfair labor practice and not attack the validity of the arbitrator's decision.

In those circumstances, we conclude that it is inaccurate to view the board's action as tantamount to rescinding the arbitration award. Although TriMet is correct that Oregon has a strong public policy favoring arbitration and that generally the scope of judicial review of labor arbitration awards is very limited, *see Amalgamated Transit Union v. TriMet*, 222 Or App 293, 305, 195 P3d 389 (2008), those considerations are not implicated in a case such as this, where the disciplinary process was tainted by the unfair labor practice even before the issue proceeded to arbitration, where the substance of the arbitrator's reasoning was not reviewed by the board, and where the board's relief was tailored to provide affirmative relief to remedy the unfair labor practice.

As noted, in ORS 243.676(2)(c), the legislature authorized the board to "[t]ake such affirmative action * * * as necessary to effectuate the purposes of * * * [PECBA]." In this case, TriMet used an investigative report in Doe's disciplinary proceeding despite an agreement not to do so. That was an unfair labor practice, and, as the board's ruling implies, TriMet's action tainted the disciplinary process from the beginning. To remedy that violation, the board concluded that TriMet should be held to its agreement and that the discipline that resulted from the tainted disciplinary process should be rescinded. In that light, we conclude that the board's order requiring TriMet to rescind the written warning falls within the board's authority to take affirmative action to "effectuate the purposes of * * * [PECBA]."

Affirmed on petition and cross-petition.