Argued and submitted March 19, affirmed September 15, 2021

OREGON TECH AMERICAN ASSOCIATION
OF UNIVERSITY PROFESSORS
(OREGON TECH AAUP),
*Respondent,*

*v.*

OREGON INSTITUTE OF TECHNOLOGY,
*Petitioner.*

Employment Relations Board
RC00718; A173198

500 P3d 55

Petitioner, Oregon Institute of Technology (Oregon Tech) seeks judicial review of an order of the Employment Relations Board (ERB) certifying a proposed bargaining unit of department chairs at Oregon Tech. Oregon Tech contends that department chairs do not have the right to organize under the Public Employee Collective Bargaining Act, because they are supervisory employees as defined by ORS 243.650(23)(b)(A). *Held*: Department chairs are not "supervisory employees" for purposes of ORS 243.650(23)(b). The dictionary definition of "head," combined with the surrounding text and context and the legislative history, demonstrate that the meaning in ORS 243.650(23)(b)(A) is a person who is "in charge" of a department with an administrative, rather than academic focus. Although department chairs are significantly involved in the day-to-day operations of their departments, they are not "in charge" of those departments nor is their primary focus administrative. Accordingly, the Court of Appeals affirmed ERB's order certifying the proposed bargaining unit.

Affirmed.

Jeffrey P. Chicoine argued the cause for petitioner. Also on the briefs was Miller Nash Graham & Dunn LLP.

Jason M. Weyand argued the cause for respondent. Also on the brief was Tedesco Law Group.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Petitioner, Oregon Institute of Technology (Oregon Tech), seeks judicial review of an order of the Employment Relations Board (ERB) that certified respondent, Oregon Tech American Association of University Professors (the Association) as the exclusive representative of a proposed bargaining unit of department chairs at Oregon Tech. Oregon Tech contends that department chairs do not have the right to organize under the Public Employee Collective Bargaining Act (PECBA), because they are supervisory employees as defined by ORS 243.650(23)(b)(A). We affirm ERB's order certifying the proposed bargaining unit.

## I.   BACKGROUND

ERB's material findings of fact are undisputed, and we draw our facts from ERB's order. Oregon Tech has approximately 300 faculty members and is one of seven public universities in Oregon. It is led by the university's president, who serves as the executive officer and has the authority to direct the affairs of the university under the supervision of the Board of Trustees. Below the president, Oregon Tech identifies as "Executives of the University" the provost, eight vice presidents and associate vice presidents, the Chief Human Resources Officer, and the Secretary of the Board of Trustees.

The provost is Oregon Tech's Chief Academic Officer and supervises the academic programs in the university's two colleges, which are divided into 15 departments. Each college has a dean responsible for the academic and administrative activities of their college, including strategic planning, budgeting and fiscal management, negotiating newly appointed faculty members' salaries, approving new faculty positions, and awarding tenure, rank, and merit salary increases. The deans, as well as six directors and one associate dean, each report to the provost.

A department chair, the position at the center of this case, is a faculty member, according to Oregon Tech policy at the time the collective bargaining position was submitted, whose "first priority is to serve as teaching

faculty."[1] Generally, department chairs report directly to their college's dean, participate in the dean's leadership team, and serve as a communicative link between the administration and the faculty. As described in more detail below, department chairs are tenure-track faculty who have both supervisory and academic duties.

The Association filed a petition proposing a bargaining unit of Oregon Tech employees described as follows:

> "All faculty Department Chairs at the Oregon Institute of Technology, excluding employees in the following groups: (1) faculty employed as a president, vice president, provost, vice provost, dean, associate dean, assistant dean, head or equivalent position; (2) faculty employed in an administrative position without a reasonable expectation of teaching, research or other scholarly accomplishments; (3) classified staff; (4) confidential employees; and (5) all faculty, instructors or librarians in any other bargaining unit."

Oregon Tech objected to the petition, arguing that its department chairs are "supervisory employees" and therefore ineligible to form collective bargaining units under ORS 243.650(23). ERB concluded that the department chairs are not supervisory employees under the statute and certified the proposed bargaining unit. Oregon Tech seeks judicial review, arguing that the position of department chair at Oregon Tech is a supervisory employee—specifically a "head or equivalent position"—under ORS 243.650(23)(b)(A) and that ERB erred by concluding otherwise.

## II.   STANDARD OF REVIEW

We review ERB's orders for substantial evidence and errors of law, and to determine whether its analysis comports with substantial reason. ORS 183.482(8); *Portland Fire Fighters' Assn. v. City of Portland*, 267 Or App 491, 498, 341 P3d 770 (2014).

## III.   ANALYSIS

Before we begin our analysis, we must determine how much, if any, deference to afford ERB's interpretation of

---

[1] The language regarding a department's chair's "first priority" was removed several days after the collective bargaining petition was filed.

the disputed terms. *Arvidson v. Liberty Northwest Ins. Corp.*, 366 Or 693, 700, 467 P3d 741 (2020). The Association contends that our review of ERB's interpretation of the term "head or equivalent position" is entitled deference because it involves "delegative terms." "Delegative terms" are general terms designed to give "an agency the authority, responsibility and discretion for refining and executing generally expressed legislative policy." *Springfield Education Assn. v. School Dist.*, 290 Or 217, 228, 621 P2d 547 (1980).

*Springfield* compels the conclusion that the term is not delegative. In *Springfield*, the court examined whether the term "other conditions of employment" is a delegative term as used in the definition of "[e]mployment relations" in ORS 243.650(7), which provides that "'[e]mployment relations' includes, but is not limited to, matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, *** grievance procedures and other conditions of employment." The court concluded that it was not, reasoning that the legislature used definitional examples to fully express its legislative policy choice as to what employment relations includes, and "[t]he reference to 'other' subjects was not a delegation to ERB to make different choices; rather, it is *** a direction to ERB to replicate the same choice by regarding as 'employment relations' only those subjects which embody the same characteristics" as those listed. 290 Or at 233.

The term at issue here, "head or equivalent position," is analogous to the term "employment relations" as used in *Springfield*. Like in *Springfield*, the legislature provided definitional examples, including "head," to express its intent, and limited the term "equivalent position" to include only those positions that embody the same characteristics as the listed positions. "The question of whether [a position] is like or unlike the listed [positions] is one of interpretation, not of discretion." *Id.* Accordingly, we do not defer to ERB's statutory construction of ORS 243.650(23)(b)(A) and instead review for errors of law.[2]

---

[2] The Association also contends that ERB's interpretation is entitled to deference because, "[u]nder ORS 243.682(1), the power to determine whether a group of employees is appropriate for a bargaining unit is vested in ERB, and the statute presumes ERB to have expertise." *OSEA v. Deschutes County*, 40 Or App

Under the Public Employee Collective Bargaining Act (PECBA), "[p]ublic employees have the right to form, join and participate in the activities of labor organizations of their own choosing for the purpose of representation and collective bargaining with their public employer on matters concerning employment relations." ORS 243.662. However, "supervisory employees" are not "public employees" and cannot be appropriately included in a bargaining unit. ORS 243.650(19). The definition of "supervisory employee" applicable to this case is provided by ORS 243.650(23)(b):

> "'Supervisory employee' includes a faculty member of a public university *** who:
>
> "(A)  Is employed as a president, vice president, provost, vice provost, dean, associate dean, assistant dean, *head, or equivalent position*; or
>
> "(B)  Is employed in an administrative position without a reasonable expectation of teaching, research or other scholarly accomplishments."

(Emphasis added.) Here, Oregon Tech argues that the position of department chair at its university "is employed as *** a head, or equivalent position" and department chairs are therefore supervisory employees. This argument requires us to construe the statutory language to determine the meaning of "head or equivalent position."

A.   *Statutory Interpretation of ORS 243.650(23)(b)(A)*

When we interpret a statute, "[w]e ascertain the legislature's intentions by examining the text of the statute in its context, along with relevant legislative history, and, if necessary, canons of construction." *State v. Cloutier*, 351 Or 68, 75, 261 P3d 1234 (2011) (citing *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009)). We begin with the text of the statute. ORS 243.650(23)(b)(A) does not define any of the listed positions, including "head," though they are

---

371, 376, 595 P2d 501 (1979). However, ERB did not make an appropriateness determination under ORS 243.682 in this case, and, accordingly, is not entitled to any deference associated with that function. *See Oregon AFSCME Council 75 v. OJD-Yamhill County*, 304 Or App 794, 813, 469 P3d 812, *rev den*, 367 Or 75 (2020) (describing the process of an appropriateness determination under ORS 243.682).

in common use at Oregon's public institutions, to which the statute applies. "In the absence of any evidence to the contrary, we assume that the legislature intended to give those words their 'plain, natural, and ordinary meaning.'" *State v. Ziska*, 355 Or 799, 804, 334 P3d 964 (2014) (quoting *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993)). To determine that ordinary meaning, we turn first to definitions from dictionaries that were in use at the time the statute was enacted. *Id.* at 804-05.

ORS 243.650(23)(b) applies only to seven specific public universities, and the legislature identified eight university positions by name. Thus, it is the meaning of the term within the field of collegiate academia that is most relevant to determining what the legislature intended to include as supervisory employees under the provision at issue here. *See Ziska*, 355 Or at 805 (noting that, when a word can be used in a variety of senses, "resort to dictionaries does not reveal which sense the legislature had in mind," so "we look to the terms of the statute and how the words in dispute are used in context"). Of the more than two dozen definitions listed under the noun form of "head," then, the most relevant definition is

> "one who stands in relation to others somewhat as the head does to the other members of the body: director, chief[, such] as *** one in charge of a division or department in an office or institution; *esp*: one in charge of a department in a school, college, or university."

*Webster's Third New Int'l Dictionary* 1042 (unabridged ed 2002). Accordingly, we interpret "head or equivalent" as used in the statute to refer to a person who is "in charge of a division or department."

An examination of the "text in context and relevant legislative history" further clarifies this definition. *Ziska*, 355 Or at 804. Context of a statute may include, when helpful, "prior versions of the statute, *** including any wording changes in a statute over time." *Id.* at 806 (internal citations omitted).

The provision at issue was added to ORS 243.650(23) in 2017 through the enactment of House Bill (HB) 3170 (2017). Or Laws 2017, ch 553, § 1. HB 3170 changed the way that the supervisory status of public university faculty was determined. Before its enactment, supervisory status was determined by evaluating whether the position exercised various types of authority (*e.g.*, hiring, transferring, discharging, or promoting other employees) to be classified as a supervisory employee. HB 3170 altered this method by removing those types of authority in favor of job titles to describe which faculty members are supervisory employees and which are not.

The legislative history also reflects an intent to exclude those faculty members "whose duties have an academic rather than an administrative focus," even if they had supervisory responsibilities as well. Video Recording, Senate Committee on Education, HB 3170A, May 18, 2017, at 1:08:32 (statement of LPRO analyst Lisa Gezelter). That is, HB 3170 "excludes from the definition of supervisory employees those faculty members of public universities who are not high-level administrators or who have a reasonable expectation of teaching, research, or other scholarly accomplishments * * * [so that] faculty members with an academic focus would be permitted to organize under [PECBA]." Video Recording, Senate Floor, HB 3170, June 26, 2017, at 37:34 (statement of Sen Michael Dembrow).

The legislature seemed to be particularly concerned about faculty members who retain an academic focus despite moving in and out of supervisory roles, for example,

"[t]hose who work in laboratories doing scientific research. They both teach and lead research teams * * *. During semesters in which they're primarily teaching, they clearly belong in the faculty union. But during semesters in which they're mainly leading their research team, there's [a] question about whether or not they should be in the faculty unit or considered supervisory management.

"We have a situation in which faculty are moving or in the future will be moving in and out of union representation over the course of a year, which is awkward, inefficient, and unclear. House Bill 3170 B clarifies the situation."

Video Recording, Senate Floor, HB 3170, June 26, 2017, at 36:44 (statement of Sen Michael Dembrow).[3]

Finally, HB 3170 also amended another statutory section, ORS 243.682, governing the factors ERB must consider in determining whether a bargaining unit is appropriate. Under the revisions, ERB may not designate a bargaining unit as appropriate if it includes both a "faculty member described in ORS 243.650(23)(c)(C) who supervises one or more other faculty members" and a "faculty member who is supervised by [that faculty member]." ORS 243.682(1)(a).

That provision confirms that determining whether someone is a supervisory employee for purposes of ORS 243.650(23)(b) does not turn on the act of supervising. There are faculty members who both supervise other faculty members and are public employees making up bargaining units under PECBA. Faculty members who do not fall into the description of supervisory employee contained in ORS 243.650(23)(b) are explicitly not supervisory employees, even if they supervise other faculty members.

To sum up, the dictionary definition of "head," combined with the surrounding text and context and the legislative history, demonstrate that the meaning of "head" in ORS 243.650(23)(b)(A) is a person who is "in charge" of a department or division and has an administrative rather than academic job focus. With that meaning in mind, we must determine whether department chairs at Oregon Tech fall within that description of "head or equivalent position."

## B.　*Application of ORS 243.650(23)(b)(A)*

In determining whether a department chair "is employed as *** a head or equivalent position" at Oregon

---

[3] Oregon Tech asserts that this testimony supports the conclusion that the legislature *only* meant to include as public employees those faculty members who lead temporary research teams, not department chairs. However, in the same testimony, Senator Dembrow noted that

"[f]aculty department chairs do most of the day to day coordination of department workflow and planning. Nevertheless, they are generally not considered supervisory management because they don't have final hiring and firing authority over their peers and as a result are considered part of the faculty collective bargaining unit."

Video Recording, Senate Floor, HB 3170, June 26, 2017, at 36:15 (statement of Sen Michael Dembrow).

Tech, we must examine a chair's duties, responsibilities, and place within the academic and administrative framework of the university to evaluate whether a department chair is "in charge" of their departments and have an administrative focus rather than an academic one. We conclude that, unlike high-level administrators, the position of department chair at Oregon Tech is not "in charge" of the department, nor does it have an administrative focus.

According to Oregon Tech's policy in effect at the time that the collective bargaining petition was filed, a department "chair's first priority is to serve as teaching faculty." Chairs are all tenure-track or tenured faculty who take on the role of department chair as part of their institutional service. Institutional service is one of the criteria considered when faculty members are evaluated for promotion along the tenure track, and most forms of institutional service require faculty members to take on some kind of administrative work for the university in addition to their teaching and research.

In the position of department chair, Oregon Tech faculty members are required to maintain a teaching load, with the option of "academic releases" that serve to reduce their teaching requirement to accommodate department responsibilities. They continue to meet with and advise students, to conduct research, and to continue their professional development. On average, department chairs have an academic release of 0.5 FTE and otherwise maintain their teaching duties. Department chairs' continued teaching requirements, eligibility to be promoted as instructional faculty, and the fact that service as a department chair supports that eligibility for promotion, all indicate that the position holds an academic, rather than administrative, focus.

The employment structure of the chair role at Oregon Tech also indicates that department chairs are not "employed as a head" in charge of their departments. Department chairs are not appointed by the administration, as one would expect an "employment" relationship to begin, but rather are selected by their peers. Moreover, department chairs serve a finite term of four years, and they are only reappointed if their peers and the dean agree. Significantly,

department chairs are compensated for the administrative work by stipend because it is explicitly an addition to the duties that their base-salary compensates. They are also governed by the faculty policies regarding compensation, grievances, and promotions, unlike Oregon Tech's unclassified administrators.

Oregon Tech points out that department chairs report directly to the deans, participate in the dean's leadership team, and "serve as the dean's representative in the daily operations of the department." Further, they are tasked with managing the department's budget, which includes allocating funds to faculty stipends and making some departmental equipment purchases. Within the department's budget and consistent with its mission, department chairs decide which courses will be offered and when, and also assign faculty to teach courses.

These limited managerial duties, however, fall short of establishing that a department chair is "in charge" of a department. Department chairs may make recommendations about the budget to the dean, but the final decision-making authority over the budget rests with the dean and provost. Similarly, department chairs can allocate academic release time, give faculty members verbal guidance and feedback on their performance, and assign faculty members to teach specific courses, but they do not have independent authority to hire, promote, or fire faculty members.

Taking the above into consideration, we conclude that, although department chairs are significantly involved in the day-to-day operations of their departments, they are not "in charge" of those departments. In addition to that lack of authority, the primary focus of an Oregon Tech department chair's role is academic, rather than administrative. As a result, department chairs are not "employed as a head or equivalent position" such that they constitute "supervisory employees" for purposes of ORS 243.650(23)(b). Accordingly, we affirm ERB's order certifying the Association as the exclusive representative of the proposed bargaining unit of Oregon Tech department chairs.

Affirmed.