Argued and submitted June 7, affirmed September 8, 2022

## PORTLAND FIRE FIGHTERS'
## ASSOCIATION, IAFF LOCAL 43,
*Petitioner,*

*v.*

## CITY OF PORTLAND,
*Respondent.*

### Employment Relations Board
### UP05913; A174891

518 P3d 611

In this petition for judicial review, the Portland Firefighters Association, IAF Local 43 (the union), contends that, in an order on remand from *Portland Fire Fighters' Assn. v. City of Portland*, 302 Or App 395, 461 P3d 1001 (2020), the Employment Relations Board (ERB) erred in holding that, through its actions in negotiating budget cuts for the 2013-14 fiscal year from the City of Portland's Fire Bureau, the union waived its ability to bring an unfair labor practice claim against the city under the Public Employees Collective Bargaining Act (PECBA). The union contends that ERB erred because, under the collective bargaining agreement, an agreement to waive requirements for collective bargaining on operational changes was required to be in writing, and here there was no written waiver. The union further contends that ERB's conclusion that there was an agreement to waive the right to challenge the operational changes is not supported by substantial evidence or substantial reason. *Held*: There was no requirement in the collective bargaining agreement that a waiver of the provisions of PECBA's provisions for collective bargaining of operational changes be in writing. A waiver could be implied from a clear, unequivocal, and decisive act of the party evidencing a conscious and voluntary abandonment of the right to bargain. ERB's determination that the union, by participating in negotiations, agreeing with the city on a budget, and promising not to contest the operational changes, waived its right under PECBA to bring an unfair labor practice claim against the city for implementing changes without engaging in collective bargaining, was supported by substantial evidence and substantial reason.

Affirmed.

Noah T. Barish argued the cause for petitioner. Also on the briefs were Elizabeth A. Joffe and McKanna Bishop Joffe, LLP.

Denis Vannier argued the cause and filed the brief for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

This case is presented to us for a second time. In *Portland Fire Fighters' Assn. v. City of Portland*, 302 Or App 395, 461 P3d 1001 (2020), we held that the Employment Relations Board (ERB) erroneously concluded that, *through inaction*, the Portland Firefighters Association, IAFF Local 43, had waived its ability to bring an unfair labor practice claim against the City of Portland under the Public Employees Collective Bargaining Act (PECBA). We reasoned that the city had not asserted an affirmative defense of waiver *by inaction*, and we reversed and remanded. *Id.* at 403.

On remand, ERB received additional briefing and held a new hearing and determined that the city had established its affirmative defense of waiver *by action*. In its petition for review, the union asserts that ERB once again erred. We review ERB's order for substantial evidence and errors of law, and to determine whether its analysis comports with substantial reason. *Oregon Tech AAUP v. Oregon Institute of Technology*, 314 Or App 595, 597, 500 P3d 55 (2021), *rev den*, 369 Or 504 (2022); *see also* ORS 663.220(2) ("The findings of the board with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, are in like manner conclusive."); *Amalgamated Transit Union, Div. 757 v. TriMet*, 250 Or App 681, 689, 282 P3d 2 (2012) (the court reviews ERB's findings of fact for substantial evidence). We conclude that ERB did not err and that ERB's order determining that, by its action, the union waived its right to bring an unfair labor practice claim against the city, is supported by substantial evidence and substantial reason. We therefore affirm.

The underlying facts were recited in our original opinion and did not change on remand. We summarize them only briefly here as necessary for context. Mid-term for the collective bargaining agreement for the period July 1, 2012 to June 30, 2016, the city realized that deep budget cuts were required for the 2013-14 fiscal year, and proposed cuts of $4.4 million from the city's Fire Bureau. The city proposed to close four fire companies, which would have resulted in a layoff of 26 bargaining-unit firefighters. The mayor also sought to implement "innovations," by replacing the four companies with certain equipment, as noted below.

The union and the fire chief sought to avoid the layoffs. In May 2013, the union, through its president Alan Ferschweiler, engaged in budget negotiations with Fire Chief Janssens and Noah Siegel, the mayor's policy adviser. As we recited in our first opinion, although the parties presented conflicting testimony in the contested case hearing as to whether they ultimately reached an agreement as a result of the meetings,

> "ERB found that, in the third meeting, the mayor's liaison and Ferschweiler reached an oral agreement as to how the cuts would be implemented and that Ferschweiler agreed not to contest the changes through grievance."

*Portland Fire Fighters' Assn.*, 302 Or App at 398.[1] The oral agreement that ERB found the union and the city had reached provided that, in exchange for the city's agreement to preserve 26 firefighter positions, to apply for a "SAFER" grant to pay for those positions, and to provide bridge funding until the grant money became available, the city would eliminate certain promotional positions and implement innovations through new equipment, and the union would not grieve cost-saving operational changes that would ordinarily have been subject to mandatory bargaining.[2] The city adopted the budget, applied for the SAFER grant, and implemented the changes.

The union subsequently brought a grievance, which it ultimately dismissed, and then an unfair labor practice claim, asserting that the city had failed to bargain over mandatory subjects of bargaining and had made unilateral changes to operations in violation of ORS 243.672(1)(e).[3] The city responded, among other arguments, that Ferschweiler,

---

[1] On remand, ERB adhered to that finding, which, as we discuss below, the union now challenges, contending that substantial evidence does not support it.

[2] The operational changes are described in ERB's order:

"(1) eliminating the Dive Team; (2) transferring Safety Chief and Chief Investigator assignments to management; (3) replacing some trucks and engines with quints; (4) permanently implementing an RRV program; (5) eliminating three Fire Investigator positions; and (6) eliminating standby pay in the Investigations unit."

[3] The union alleged that the city had committed an unfair labor practice by "refus[ing] to bargain collectively in good faith" with the Union over the budget-related changes. *See* ORS 243.672(1)(e) (providing that it is an unfair labor practice for an employer to "[r]efuse to bargain collectively in good faith with the exclusive representative").

on behalf of the union, had waived the union's ability to object to unilateral changes by negotiating and agreeing to the budget and operational changes and orally promising not to grieve those changes.[4]

In its first order, ERB determined that, by the union's *inaction* in failing to demand to bargain over the operational changes within a reasonable time, it had waived its right to bargain over the operational changes and to bring the unfair labor practice claim. We reversed ERB's ruling on that issue, explaining that the city had not raised a theory of waiver based on inaction and thus could not prevail on that theory, on which it had the burden of proof. *Id*. at 403 ("[I]n light of the fact that the city never asserted the affirmative defense of waiver by inaction, it cannot be said to have established it.").

On remand and in its order now on review, ERB determined that it would adhere to its findings of fact stated in its first order, which ERB said the union had not challenged on remand, despite the opportunity to do so. Based on those findings, which included the finding that the union and the city had reached an oral agreement, ERB again agreed with the city's affirmative defense of waiver, but this time based on the theory that the union had waived its rights through its actions—by participating in negotiations, agreeing with the city on a budget, and promising not to contest the operational changes:

> "Here, as set forth in the findings of fact that we adhere to on remand (and which the Union has not disputed on remand), before deciding on and implementing the disputed operational changes, the City met multiple times with the Union over these changes, and the Union ultimately agreed not to contest the changes that were part

---

[4] The city's affirmative defense alleged:

"Alan Ferschweiler, in his capacity as president of the [union], met with Fire Chief Janssens and Noah Siegel, the Mayor's policy adviser, at a budget forum meeting. During the meeting Mr. Ferschweiler agreed to the operational changes[.] The City materially changed its position and pursued a * * * grant in reliance on the [union] president's agreement. By agreeing to those operational changes, [the union] should be prevented from now claiming that the City unilaterally changed working conditions without bargaining. Alternatively, by agreeing to those operational changes, [the union] waived any right that it had to bargain over the impact of those changes."

of a bundled package of budgetary measures that included the assumed SAFER grant funding to save 26 jobs for the Union's members. Under these circumstances, we conclude that the Union's action of agreeing not to contest the changes bars a (1)(e) charge on the same changes."[5]

On judicial review, the union raises two assignments of error, and contends that the board erred in determining that the union had waived the right to bring an unfair labor practice claim challenging the changes. The union contends in its first assignment of error that ERB erred by adhering in its order on remand to the finding in its first order that the union had orally agreed not to oppose the budget-related changes in exchange for the city's agreement to apply for the SAFER grant and to provide bridge funding before the grant was obtained in order to preserve 26 firefighter positions.[6] The union contends that ERB's finding of an agreement is not supported by substantial evidence. The city responds that the union's contention is not preserved, because, on remand from this court's first opinion, which did not address ERB's findings, the union did not dispute ERB's former findings, although it had the opportunity to do so.

We have reviewed the transcript of the proceedings before ERB on remand. It shows that the union did indeed mention the sufficiency of the evidence to support ERB's findings, but not in its briefing and not until its rebuttal at oral argument. That apparently was not sufficient for the board to have considered the issue to have been raised.[7]

---

[5] One board member dissented, making the points that the union now raises in its petition and that we reject.

[6] ERB found that the union, through Ferschweiler, and the city had agreed that (1) two double companies would be consolidated into single companies with each station's truck and engine being replaced with a quint; (2) two additional RRVs would be added (for a total of four); (3) the Union would not oppose or contest these changes; (4) the bargaining unit members would retain their COLA; (5) all stations would be kept open; and (6) the city would apply for the SAFER grant, with the understanding that receiving the grant would prevent 26 bargaining-unit members from being laid off.

[7] Nor would it have been sufficient in this court. *See State v. Jones*, 184 Or App 57, 60 n 2, 55 P3d 495 (2002) ("At oral argument, defendant contended for the first time on appeal that the charged offenses were not of the same or similar character. Because defendant did not raise that issue in his opening brief, we decline to reach it here."); *see also State v. Murga*, 291 Or App 462, 422 P3d 417 (2018) (An issue raised for the first time in an appellant's reply brief generally will not be considered on appeal.).

Thus, ERB expressly did not consider that the issue had been presented to it and did not address it.

But even assuming that the issue was adequately preserved, we would reject the union's argument that ERB's finding is not supported by substantial evidence. Although there is evidence that would support a finding that the parties did not reach an agreement relating to the operational changes that would be subject to mandatory bargaining, there is also evidence that the parties did reach an oral agreement to implement the operational changes necessitated by the negotiated budget and that Ferschweiler agreed that the union would not contest the operational changes. We conclude that ERB's finding that an oral agreement was reached is supported by substantial evidence.

The union contends that, even assuming that ERB correctly found that the union and the city had reached an agreement, under the collective bargaining agreement, any agreement to waive statutory or contractual rights was required to be in writing and therefore is not enforceable. The union cites the discussion in our first opinion addressing the city's contention that the budget negotiations constituted collective bargaining that resulted in an enforceable agreement. We concluded for several reasons that the budget negotiations did not satisfy the statutory requirements for collective bargaining and therefore could not result in an enforceable agreement. *Portland Fire Fighters' Assn.*, 302 Or App 401-03. We noted additionally that the collective bargaining agreement required that "any side agreements to the collective-bargaining agreement were not binding unless reduced to writing." *Id*. at 402.

Citing that quoted statement, the union contends that the holding of our first opinion was that *any* agreement on behalf of the union must be in writing and that that holding is the law of the case. Thus, the union contends, the purported agreement by Ferschweiler not to grieve operational changes could not constitute a waiver of the right to bring an unfair labor practice claim, because the agreement was not in writing, as the union contends we held to be required by the collective bargaining agreement.

We are not persuaded. Our discussion in our first opinion was directed only to ERB's holding that the parties' oral agreement had satisfied the statutory requirements for collective bargaining. Our discussion did not bear on the issue presented here—whether a waiver of rights under a statute or collective bargaining agreement can result from an oral agreement. Our opinion did not hold that a waiver of rights by agreement must be in writing.

Further, we reject the union's contention that the collective bargaining agreement itself required that an agreement to waive the right to bring an unlawful labor practice claim must be in writing. The provision on which the union relies provided:

> "Any settlement of a grievance under this Article which would alter or amend the terms of this agreement *or any side bar agreement or memorandum* of understanding shall not be binding unless the settlement, or memorandum of understanding or a side bar agreement, is approved in writing by the president of the Union and the Director of the Bureau of Human Resources."

(Emphasis added.) The union contends that the agreement reached between the city and Ferschweiler was a "side bar agreement" that the collective bargaining agreement required to be in writing. As we understand the quoted paragraph, however, the requirement for a writing pertains to mid-contract settlements or "side bar agreements" that would alter the bargained-for terms of the collective bargaining agreement. Although the contract terms could not be altered or amended except in writing, our case law separately provides that those terms can be waived, by "clear and unmistakable language in a contract, bargaining history, or the party's action or inaction." *Id.* (citing *Assn. of Oregon Corrections Emp. v. State of Oregon*, 353 Or 170, 177, 295 P3d 38 (2013)). The waiver that ERB on remand found had occurred did not change the terms of the collective bargaining agreement that would require bargaining over operational changes; it waived them, which is an affirmative defense that the law provides to a claim of a unilateral contract change. *Portland Fire Fighters' Assn.*, 302 Or App at 402. The collective bargaining agreement did not require that a waiver be in writing.

In its second assignment of error, the union contends that ERB erred in holding that the city had established its affirmative defense of waiver. As we held in our first opinion, "[i]n the labor context, case law establishes that a party may waive its right to bargain through clear and unmistakable language in a contract, bargaining history, or the party's action or inaction." *Id.* (citing *Assn. of Oregon Corrections Emp.*, 353 Or at 177). The waiver of a statutory right requires an "intentional relinquishment or abandonment of a known right or privilege," which is demonstrated by "a clear, unequivocal, and decisive act of the party showing such a purpose[.]" *Portland Fire Fighters' Assn.*, 302 Or App at 402; *Waterway Terminals v. P. S. Lord*, 242 Or 1, 26, 406 P2d 556 (1965) ("To make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose[.]"). "Waiver must be plainly and unequivocally manifested, either 'in terms or by such conduct as clearly indicates an intention to renounce a known privilege or power.'" *Wright Schuchart Harbor v. Johnson*, 133 Or App 680, 685-86, 893 P2d 560 (1995) (quoting *Great American Ins. v. General Ins.*, 257 Or 62, 72, 475 P2d 415 (1970)). Here, there was no explicit "waiver," *per se*; thus, any waiver must be implied from conduct. If a waiver is to be implied from conduct or circumstances, it is a question of fact for the trier of fact to determine whether there has been a "clear, unequivocal, and decisive act of the party," *Waterway Terminals*, 242 Or at 26, evidencing a "conscious and voluntary abandonment of some right or privilege," *Deschutes County v. Pink Pit, LLC*, 306 Or App 563, 576, 475 P3d 910 (2020) (citing *Great American Ins.*, 257 Or at 72).

ERB determined that, through its actions, the union waived its right to contest the operational changes to which Ferschweiler had agreed. ERB found that the union's intention to waive its right to dispute operational changes was "clear and unmistakable." On judicial review, we review ERB's order for substantial evidence and substantial reason, and its legal conclusion as to whether the findings resulted in a waiver for legal error. *See Oregon Tech AAUP*, 314 Or App at 597. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding. *Clackamas County*

*Employees' Assn. v. Clackamas County*, 308 Or App 146, 149, 480 P3d 993 (2020). Substantial reason requires us to review the reasoning that led ERB from those facts to its conclusions and evaluate whether that reasoning reflects a correct interpretation of the law. *Id.*

We have reviewed the record and conclude that substantial evidence supports ERB's determination that the union waived its right to challenge the operational changes. ERB found:

> "[T]he unusual facts of this case—the time-constrained discussions, multiple meetings, participation by high-level representatives of both sides, and ultimate concession by the City to the Union's primary objective to retain 26 firefighter jobs—persuasively demonstrate a clear and unmistakable waiver by the Union not to contest the now-contested changes."

We note ERB's application of the "clear and unmistakable" standard. ERB applied that standard in response to the union's contention that it was applicable when the source of the alleged waiver was an agreement. We agree with the union that the "clear and unmistakable" standard would apply in the context of construing the language of a contractual waiver. *See Assn. of Oregon Corrections Emp.*, 353 Or at 180; *Portland Fire Fighters' Assn.*, 302 Or App at 402 ("In the labor context, case law establishes that a party may waive its right to bargain through clear and unmistakable language in a contract, bargaining history, or the party's action or inaction."). But when, as here, the asserted waiver is not based on a contractual provision but is to be implied from conduct or circumstances, we apply the standard enunciated in *Waterway Terminals*, 242 Or at 26, that is, whether there has been a "clear, unequivocal, and decisive act of the party," evidencing a "conscious and voluntary abandonment of some right or privilege." *Pink Pit, LLC*, 306 Or App at 576 (citing *Great American Ins.*, 257 Or at 72). We have never before addressed the significance of the distinction between the "clear and unmistakable" and "clear, unequivocal, and decisive" standards. However, we conclude that they are sufficiently similar that any error in ERB's description of the union's waiver as "clear and unmistakable" rather than the "clear, unequivocal, and decisive" was harmless.

We further conclude that ERB articulated a rational connection between the facts and the legal conclusion it drew from them and that its reasoning reflects a correct interpretation of the law. *Clackamas County Employees' Assn.*, 308 Or App at 152 (noting our "substantial reason review requires us to determine whether ERB has articulated a rational connection between the facts and the legal conclusions it draws from them" (internal quotation marks and brackets omitted)).

Finally, we reject the union's contention that, if there was a waiver, it was limited to the right to *grieve* the unilateral changes and did not include a waiver of the right to bring an unfair labor practice claim. ERB found that the union's waiver encompassed all objections to the unilateral operational changes, and that the union's agreement not to contest the agreed-upon changes was central to the parties' settlement of the budget dispute. ERB stated,

> "Under that accord, the mayor did not insist on adhering to earlier reluctance to seek outside, short-term grant funding to save union-represented jobs, and in exchange, the Union committed that it would not contest department-level operational changes sought by the mayor. Indeed, the commitment to not contest those changes was an essential element of the parties' accord."[8]

We conclude that ERB's finding that the agreement not to contest operational changes encompassed all objections

_____

[8] ERB found:

"[W]e reiterate that the persuasive facts establish that, for the City to reach a deal on the Union's terms that would save the 26 union-represented positions (which required both adoption of a budget necessary for that deal and the agreed operational changes funded by that budget), it was essential for the City to have the Union's agreement that it would not oppose or contest those changes. We find nothing in the facts (and nothing persuasive) that establishes, as the Union argues, that the Union agreed not to file a grievance over the operational changes, but retained the right to file a (1)(e) charge regarding those same changes. To the contrary, the facts establish that it was a central concern for the City to have the Union's buy-in on the operational changes proposed by the Chief (and ultimately adopted by the City), such that the City would not have to defend or further modify those changes in any forum (either by grievance or in an unfair labor practice proceeding). The record includes sufficient evidence to demonstrate that the Union made a commitment not to contest the budget changes, which included the operational changes, in order to secure the City's commitment to apply for the SAFER grant and save 26 jobs."

to the operational changes is supported by substantial evidence.

Affirmed.