Argued and submitted June 15, 2020, reversed and remanded June 16, 2021

SERVICE EMPLOYEES
INTERNATIONAL UNION LOCAL 503,
Oregon Public Employees Union,
*Respondent,*

*v.*

UNIVERSITY OF OREGON,
*Petitioner.*

Employment Relations Board
UP01417; A170000

494 P3d 993

On judicial review of a final order of the Employment Relations Board (ERB), petitioner university challenges a determination that it violated its obligation under ORS 243.682(1)(e), a provision of the Public Employees Collective Bargaining Act (PECBA), to "bargain collectively in good faith" with respondent union. After an employee raised concerns to a union steward about possible age discrimination in a particular department, a university human resources manager interviewed the employees in that department and wrote a report summarizing the interviews and his recommendations. The union requested a copy of the report. The university provided a redacted copy of the report, citing confidentiality concerns based on the university's Faculty Records Policy. The union demanded an unredacted copy of the report, spurring negotiations as to possible conditions for disclosure of an unredacted copy. Meanwhile, the union filed a claim with ERB, asserting that the university had violated its disclosure obligations under PECBA. ERB ruled in the union's favor, based in part on its determination that the redacted information was not confidential. The university contends that ERB's order lacks substantial reason. *Held*: ERB's order lacks substantial reason. ERB's confidentiality analysis was logically flawed, such that its overall analysis was also necessarily flawed.

Reversed and remanded.

Daniel L. Rowan argued the cause for petitioner. Also on the opening brief was Bullard Law and on the reply brief CDR Labor Law, LLC.

Katelyn S. Oldham argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Reversed and remanded.

**AOYAGI, J.**

Under ORS 243.672(1)(e), a provision of the Public Employee Collective Bargaining Act (PECBA), the University of Oregon (UO) is obligated to "bargain collectively in good faith" with the Service Employees International Union Local 503, Oregon Public Employees Union (SEIU). UO seeks judicial review of a final order of the Employment Relations Board (ERB), in which ERB determined that UO violated that obligation when it sought to impose conditions on disclosing to SEIU certain information that was confidential under UO's Faculty Records Policy (FRP). For the following reasons, we agree with UO that ERB's analysis was flawed and, accordingly, reverse and remand.

UO and SEIU are parties to a collective bargaining agreement. In 2016, an SEIU member working in the resource sharing office of the university library expressed concerns to Taylor, a union steward who worked in the library, about changes to his job description and about his supervisor, D, treating him hostilely because of age. Under the collective bargaining agreement in effect at the time, UO had a policy not to engage in unlawful age discrimination against any employee (Article 19), as well as a policy that "[b]ehaviors that contribute to an intimidating work environment, such as abusive language or behavior, are unacceptable and will not be tolerated" (Article 69). UO's human resources manager, Moore, met with the employee and Taylor. Moore then interviewed six employees in the resource sharing office, including D, and wrote a "Resource Sharing Staff Interview Report" in which he summarized what he had learned and made recommendations as to what should be done about it.

On behalf of SEIU, Taylor formally requested a copy of Moore's report, stating that it was "necessary for and relevant to the Union's performance of its statutory rights, privileges and obligations in administering and policing the collective bargaining agreement and otherwise performing its lawful functions." Taylor subsequently clarified that Moore's report was "relevant to an ongoing grievance investigation by the union," specifically related to age discrimination, and that the request was being made under PECBA. Meanwhile,

UO told Taylor that Moore's report contained information about D that was confidential under UO's FRP and thus required redaction. As relevant here, UO's FRP provides that "personal records" of an academic staff member are "confidential in order to protect privacy rights in an adequate educational environment" and "may not be released to any other person or agency without the faculty member's written consent, unless upon receipt of a valid subpoena or other court order or process or as required by valid state or federal laws, rules, regulations, or orders."

UO thereafter provided a redacted copy of Moore's report to SEIU. All references to D were redacted, which UO explained was done to comply with the FRP. UO expressed some uncertainty as to whether SEIU's request for the report would "squarely fall within PECBA," given UO's assessment that nothing in the report pertained to any possible age discrimination,[1] but it stated that it wanted to work collaboratively with SEIU and was therefore providing the report (subject to the FRP redactions).

In subsequent communications with SEIU, UO summarized the redacted information, as well as reaffirmed that none of the redacted information "had anything to do with" different treatment based on age or any other protected characteristic.

Dissatisfied, Taylor advised UO that, if UO did not provide an unredacted copy of Moore's report, SEIU would make an unfair-labor-practice claim. UO reiterated that the redacted information was confidential but raised the issue of accommodations, including the possibility of D consenting to disclosure of the information to SEIU subject to a nondisclosure agreement (NDA).[2] Around the same time, UO asked D

---

[1] Although the employee who initially reached out to Taylor had raised the issue of age discrimination to Taylor, that issue was not discussed in the initial meeting with Moore, and, when Moore subsequently interviewed the six resource sharing employees, he did not ask about age discrimination, nor did any employee bring it up.

[2] We note that ERB has recognized on other occasions that requesting consent is a form of accommodation. *See Service Employees Int'l Union Local 503 v. U of O*, 291 Or App 109, 114, 419 P3d 779, *rev den*, 363 Or 599 (2018) (affirming ERB order that UO had violated ORS 243.672(1)(e), where SEIU requested disclosure of certain student records, UO maintained that the records were confidential under a particular statute, and UO did not seek the students'

for consent to release the information. D expressed concern about the redacted information being made public, because it was unflattering and lacked proper context, and he particularly did not want Taylor to see it, because of Taylor's "personal relationship with another library employee." However, D consented to disclosure subject to an NDA.

In subsequent email communications, SEIU's lawyer thanked UO's lawyer for "taking a first stab" at drafting an NDA, and UO then provided a draft NDA. The first draft provided that only SEIU's legal counsel could read the unredacted report, that it had to be read in person in Eugene and not shared or copied, and that any violation of the NDA would result in liquidated damages of $10,000 plus attorney's fees and costs. SEIU objected to the liquidated-damages provision and to not letting Taylor see the report. In further communications, UO offered various alternative terms on the first point, eventually offering to reduce the liquidated-damages amount to $500 or eliminate it altogether and simply provide that any violation of the NDA was an unfair labor practice for which ERB could fashion whatever remedy it deemed appropriate. As to Taylor, UO reiterated D's unwillingness to consent to his seeing the report, but it offered for "any other UO steward" to review the unredacted report.

SEIU rejected the proposed NDA, stating that it would not "renegotiate the terms of the PECBA in order to receive relevant information that the Union is entitled to under the law." SEIU then filed a complaint with ERB, alleging that UO had violated its duty to bargain in good faith. *See* ORS 243.672(1) ("It is an unfair labor practice for a public employer or its designated representative to do any of the following: *** (e) Refuse to bargain collectively in good faith with the exclusive representative.").

The parties agree as to the legal principles governing such a claim. Those principles are summarized in ERB's order in this case as follows:

"It is well-settled that a public employer's obligation to collectively bargain in good faith under ORS 243.672(1)(e)

_____

consent to disclosure as allowed by the statute, which ERB described as "a basic accommodation").

includes the duty to provide an exclusive representative with requested information that has 'some probable or potential relevance to a grievance or other contractual matter.' *Association of Oregon Corrections Employees v. State of Oregon, Department of Corrections*, Case No. UP-7-98 at 7, 18 PECBR 64, 70 (1999). When analyzing (1)(e) claims, we 'begin with the premise of full disclosure.' *Id.* The burden 'is on the union to show that the requested information is relevant, and if the union fails to make that threshold showing the employer's duty to provide the information does not arise.' *Jackson County Sheriff Employees Association v. Jackson County and Jackson County Sheriff's Office*, Case No. UP-66-92 at 3, 14 PECBR 270, 270B (1993) (citing *OSEA v. Salem-Keizer School Dist. 24J*, Case No. UP-135-86, 10 PECBR 635 (1988), *aff'd*, 103 Or App 221, 797 P2d 375 (1990)).

"Even when there is a request for information of probable or potential relevance, the 'extent to which a party must supply the information requested and the length of time a party may take to do so are dependent upon the totality of circumstances present in the case; just as good or bad faith bargaining at the negotiations table must be determined by consideration of all circumstances.' *Oregon School Employees Association, Chapter 68 v. Colton School District 53*, Case No. C-124-81 at 5, 6 PECBR 5027, 5031 (1982). We assess the totality of circumstances, guided by the four factors identified in *Colton*: (1) the reason given for the request, (2) the ease or difficulty with which information could have been produced, (3) the type of information requested, and (4) the history of the parties' labor-management relations. *Id.* We urge parties to take a common sense approach in handling (1)(e) requests for information. *Oregon AFSCME Local 3581 v. State of Oregon, Real Estate Agency*, Case No. UP-42-03 at 5, 21 PECBR 129, 133 (2005)."

Thus, under the applicable standard, ERB considers the totality of the circumstances, particularly the four *Colton* factors, to determine the scope and timing of required disclosure. In that context, if confidentiality is put at issue, the responding party "must prove both a legitimate and substantial confidentiality interest, and that it pursued a good-faith accommodation to reconcile the conflict." *Service Employees Int'l Union Local 503 v. U of O*, 291 Or App 109, 112, 419 P3d 779, *rev den*, 363 Or 599 (2018). Ultimately,

ERB "balances a labor organization's need for information against any legitimate and substantial confidentiality interest established by the employer." *Ashland Police Association v. City of Ashland*, 21 PECBR 512, 520 (2006).

In this case, the parties stipulated that D is covered by and subject to the FRP. Moreover, for purposes of judicial review, UO does not contest that SEIU made the necessary threshold showing of relevance, nor—with one exception that we discuss later—does UO contest ERB's determination that the first, second, and fourth *Colton* factors weigh in favor of disclosure. That is, for our purposes, it is undisputed that Moore's unredacted report has some probable or potential relevance to a grievance or other contractual matter, and, as to the *Colton* factors, it is undisputed that SEIU gave a valid reason for requesting the unredacted report, that it would be easy for UO to produce it, and that there was nothing in the history of the parties' labor management relations to suggest that SEIU was requesting it for impermissible purposes.

It is ERB's treatment of the third *Colton* factor—specifically the confidential nature of the information redacted from Moore's report—that is at the crux of this judicial review proceeding. In contesting that it violated ORS 243.672(1)(e), UO argued to ERB that the redacted information was confidential under the FRP, which carries the force of law,[3] and that UO pursued a good-faith accommodation by trying to negotiate an NDA with SEIU so that it could disclose the information with D's consent (thus satisfying the FRP). ERB rejected UO's argument. Most importantly, it concluded that UO had failed to prove a legitimate and substantial confidentiality interest in the unredacted report. ERB explained its reasoning, in relevant part, as follows:

> "[W]e conclude that the University did not meet its burden to establish a legitimate and substantial confidentiality

---

[3] *See* ORS 352.226 (providing for the governing board of a public university to adopt standards and specific orders governing access to personnel records, including restrictions on access); ORS 352.087(1)(m) (allowing a "public university listed in ORS 352.002" to establish policies that "have the force of law"). SEIU disputes that the FRP carries the "force of law," but ERB assumed without deciding that it does, so we need not address that issue.

interest arising from its Faculty Records Policy with respect to the Report. ***

"To establish a legitimate and substantial confidentiality interest, the University relies on Section C of its Faculty Records Policy, promulgated pursuant to the statutory authority in ORS Chapter 352. *** The parties stipulated that [D] is covered by the Faculty Records Policy.

"The problem with the University's argument, even assuming that the Faculty Records Policy carries the force of law, is the express exception in the policy itself for information required to be disclosed by *other* valid state laws. Specifically, Section E(3) of the Faculty Records Policy provides that the University may not release personal records of faculty members without their 'written consent, unless upon receipt of a valid subpoena or other court order or process or as required by valid state or federal laws, rules, regulations, or orders.' Thus, if information is required by PECBA to be disclosed to a labor organization, there is no legitimate and substantial confidentiality interest arising from the Faculty Records Policy as to that particular information.

"As explained in this order, after consideration of the totality of circumstances, including all the *Colton* factors, we conclude that PECBA requires the University to disclose the Report to the Union. Consequently, Section E(3) of the Faculty Records Policy expressly provides that the Report is not confidential information because a valid state law (PECBA) requires its disclosure."

(Emphasis in original.)

Given ERB's conclusion that UO had not established any confidentiality interest, all four *Colton* factors weighed in favor of disclosure, at which point, unsurprisingly, ERB concluded that UO had violated its disclosure obligations under ORS 243.672(1)(e) by failing to disclose the unredacted report without conditions. In a footnote, ERB further stated that, even if UO had demonstrated a confidentiality interest, its proposed accommodations were unreasonable, in that its proffered NDA terms were too "stringent," even after being negotiated down, and were "not aimed at a reasonable balance between [SEIU's] need for the information and the confidentiality interest [UO] was seeking to protect."

On judicial review, UO argues that ERB relied on improper circular reasoning to conclude that UO did not establish a legitimate and substantial confidentiality interest in the redacted information, which in turn led ERB to an erroneous ultimate conclusion that SEIU's need for the unredacted report outweighed UO's (nonexistent) confidentiality interest.[4] SEIU responds that UO misrepresents ERB's order and that ERB's analysis of the third *Colton* factor is legally sound. We agree with UO.

In essence, ERB reasoned that, although the redacted information is covered by the FRP—that is, confidential under the FRP—UO did not establish a legitimate and substantial confidentiality interest in the information, because the FRP expressly allows for the release of confidential information if required by "valid *** state law," PECBA is a valid state law, and PECBA as interpreted by ERB required UO to disclose the information. That reasoning is problematically circular. The applicable legal standard used by ERB requires a *balancing* test that considers the *totality* of circumstances to determine whether the union's need for particular information outweighs the employer's confidentiality interest in the information, such that the employer must disclose, notwithstanding its confidentiality interest. After balancing the union's need against the employer's confidentiality interest, ERB may ultimately decide that the information had to be disclosed—but that does not retroactively render the information *nonconfidential*. To the contrary, the existence of a confidentiality interest is what necessitates the act of balancing in the first place.

Here, it is difficult to see how UO could have no confidentiality interest in the redacted information, given the parties' stipulation that D is covered by the FRP. In any event, ERB must assess the third *Colton* factor in its

---

[4] The following excerpt from UO's brief succinctly describes its argument:

"The primary flaw in ERB's analysis is that it confused whether the information is confidential under the FRP with whether confidential information under the FRP may be disclosed without violating the policy in certain circumstances. ERB focused solely on whether the FRP prevented disclosure and ignored the confidentiality interests that the FRP is based on. This error led to the untenable conclusion that information confidential under the express terms of the FRP and its enabling statute is not confidential in the context of the duty to provide information under PECBA."

own right—including determining whether UO established a legitimate and substantial confidentiality interest in the redacted information—without reference to ERB's *ultimate conclusion* that the totality of the circumstances weighs in favor of disclosure under PECBA. As UO puts it, "ERB's analysis puts the cart before the horse because it incorporates the ultimate conclusion that PECBA requires disclosure into the analysis of whether the information is confidential." To use another analogy, if one imagines a traditional two-sided scale, ERB's existing reasoning is equivalent to placing a sandbag of unknown weight on one side of the scale to represent SEIU's need for the requested information, placing a sandbag of unknown weight on the other side of the scale to represent UO's confidentiality interest in the information, and then declaring that the second sandbag does not exist based on a balancing of the two. The logic is simply untenable. If UO proved a legitimate and substantial confidentiality interest in the information, that interest must be weighed against SEIU's need for the information. The outcome of the weighing cannot determine the weight of the two things to be weighed.[5]

As previously mentioned, there is one other aspect of ERB's analysis of the *Colton* factors that UO challenges, which pertains to the first *Colton* factor, "the reason given for the request." UO argues that ERB conflated that factor with the low threshold test for relevance ("some probable or potential relevance to a grievance or other contractual matter"), rather than truly considering the "reason given for the request" in assessing the totality of circumstances. We agree that *Colton* requires ERB to consider "the reason given for the request," which includes but is not necessarily limited to the requesting party's explanation of the information's relevance. To the extent that ERB took a narrower approach, it did not likely affect its original decision, given ERB's conclusion that UO had not established any confidentiality interest that required balancing, but we address the issue given that it may be relevant on remand.

---

[5] We emphasize that ERB did not balance UO's confidentiality interest against SEIU's need for the information and determine that the latter *outweighed* the former. It expressly concluded that UO had not proved the *existence* of any legitimate and substantial confidentiality interest.

We next consider ERB's alternative ruling in a footnote—assuming that it was meant as a ruling (despite being in a footnote)—which UO also challenges. With respect to the reasonable-accommodation issue, ERB stated in a footnote that, even if UO had a confidentiality interest, its proposed NDA terms were too "stringent" and were "not aimed at a reasonable balance between [SEIU's] need for the information and the confidentiality interest [UO] was seeking to protect." The difficulty with that statement is that a balancing test requires an accurate understanding of the things being balanced. Because ERB failed to recognize any confidentiality interest on UO's part, we cannot discern what exactly it was balancing—for reasons similar to those already discussed—especially given ERB's brief treatment of the issue. We therefore remand on that issue as well, with instructions to reconsider the balancing issue with an accurate understanding of UO's confidentiality interest.

Finally, SEIU raises a "potential question" as to whether UO "waived confidentiality" by sharing Moore's report with various individuals and by D's statements about the report to union members who worked in D's department. We decline to consider an undeveloped argument about a "potential question" that is being raised for the first time on appeal, especially one that would seem to raise factual issues. We similarly need not address what might occur if PECBA and UO's FRP came into irreconcilable conflict. SEIU makes an argument about PECBA trumping the FRP in the event of an irreconcilable conflict, but ERB did not view PECBA and FRP as irreconcilable, nor do we. To the extent that they might prove irreconcilable in some circumstances, that presents a legal issue for another day.

Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.