Argued and submitted April 28, 2022, reversed and remanded February 8, 2023

MURIEL ELIZABETH HAIDAR,
*Petitioner,*

*v.*

PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent.*

Psychiatric Security Review Board
941304; A174806

524 P3d 986

Petitioner seeks review of an order from the Psychiatric Security Review Board (PSRB) denying her request for discharge from PSRB jurisdiction. ORS 161.351 requires discharge where the person is no longer affected by a qualifying mental disorder or no longer presents a substantial danger to others. Petitioner concedes that she is affected by a qualifying mental disorder but argues that the board's determination that she presents a substantial danger to others is not supported by substantial evidence in the record. *Held*: None of the evidence cited by the board supporting its conclusion that petitioner presented a substantial danger to others addressed petitioner's more recent physical and mental condition, which significantly changed in the years leading up to the PSRB hearing. Given the significant change in her physical and mental condition, the order denying petitioner discharge was not supported by substantial evidence.

Reversed and remanded.

Harris S. Matarazzo argued the cause and filed the brief for petitioner.

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Powers, Presiding Judge, and Hellman, Judge, and Nakamoto, Senior Judge.

POWERS, P. J.

Reversed and remanded.

**POWERS, P. J.**

Petitioner seeks review of an order from the Psychiatric Security Review Board (PSRB) denying her request for discharge from PSRB jurisdiction and continuing her conditional release to an Enhanced Residential Care Facility. On judicial review, petitioner argues that, although she is affected by a qualifying mental disorder, the board's determination that she presents a substantial danger to others is not supported by substantial evidence in the record. Petitioner contends that she should therefore be discharged from PSRB jurisdiction under ORS 161.351 (requiring discharge where "the person is no longer affected by a qualifying mental disorder or, if so affected, no longer presents a substantial danger to others that requires regular medical care, medication, supervision or treatment"). For the reasons explained below, we agree with petitioner's argument and reverse and remand the order asserting continuing jurisdiction over her.

The underlying facts are undisputed. In January 1994, petitioner was found guilty except for insanity on two counts of felony murder for killing her mother and sister by setting fire to the home that the three of them shared. Petitioner was placed at the Oregon State Hospital under the jurisdiction of the PSRB for a maximum of 40 years. *See* ORS 161.327(1)(a) (authorizing the commitment to a state hospital of a person found guilty except for insanity of a felony, if the person is affected by a qualifying mental disorder and presents a substantial danger to others). Petitioner was diagnosed with paranoid schizophrenia and later, in 2007, with dementia. In 2009, petitioner was conditionally released to a residential care facility, Premier Living, which provides care for petitioner in coordination with Cascadia Behavioral Health. In 2020, both Premier Living and Cascadia sought petitioner's discharge from PSRB jurisdiction under ORS 161.336(5)(b) (permitting any person or agency responsible for supervision or treatment to apply for discharge from conditional release).

The state opposed discharge and, under OAR 859-050-0055(3)(g), had the burden at a contested hearing before the PSRB to prove by a preponderance of the evidence that

petitioner was affected by a qualifying mental disorder and continued to present a substantial danger to others under ORS 161.351(1).[1] Two witnesses—both medical professionals that provided treatment to petitioner—were called to testify, and 113 exhibits were admitted into evidence, which included petitioner's criminal history, hospital records, and various health assessments. Following the hearing, PSRB issued an order denying discharge, explaining that a primary factor in its decision was a lack of information regarding where petitioner would live and what controls would be in place if she were discharged. In concluding that petitioner continued to present a danger to others, the order provides, in part:

> "[Petitioner], without adequate supervision and treatment, would continue to present a substantial danger to others as demonstrated by the underlying facts shown by the evidence, including the expert testimony of Megan Klein, PA, at the hearing, the circumstances surrounding the crimes for which she was placed under the jurisdiction of the Psychiatric Security Review Board, as well as the information contained in Exhibit 6, her criminal history as found in Exhibit 7, as well as the information contained in Exhibits 4, 6, 15, 22, 27, 31, 37, 55, 56, 58, 59, 61, 73, 78 and 85."

On review, petitioner argues that the board's order is not supported by substantial evidence because the testimony at the hearing showed that she has experienced significant physical and mental deterioration in recent years, and because the order fails to explain why, given her uncontested physical and mental decline, petitioner continues to be a danger to others. The board remonstrates that the record contained substantial evidence to conclude that discharging petitioner could mean removal from the highly structured environment that PSRB jurisdiction currently provides. Discharging petitioner, PSRB argues, would allow

---

[1] ORS 161.351(1) provides:

"Any person placed under the jurisdiction of the Psychiatric Security Review Board under ORS 161.315 to 161.351 shall be discharged at such time as the board, upon a hearing, finds by a preponderance of the evidence that the person is no longer affected by a qualifying mental disorder or, if so affected, no longer presents a substantial danger to others that requires regular medical care, medication, supervision or treatment."

petitioner to leave the facility and give her the option to discontinue her medications. Further, PSRB asserts that, without direct care and her medication, petitioner would potentially have increased symptoms of schizophrenia and pose a risk to others.

We review the board's order for errors of law and substantial evidence. ORS 183.482(8)(a), (c). Disputed findings are reviewed to determine whether they are supported by the evidentiary record and whether a reasonable person, viewing the record as a whole, could make those findings. ORS 183.482(8)(c); *Rinne v. PSRB*, 297 Or App 549, 557, 443 P3d 731 (2019). In addition to substantial evidence, we also review for substantial reason. *City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 271, 639 P2d 90 (1981). That is, PSRB is required to explain any conclusions it makes with enough detail for us to review its reasoning. *Knotts v. PSRB*, 250 Or App 448, 455, 280 P3d 1030 (2012). "If the board's reasoning cannot be ascertained or is faulty, then the order is not supported by substantial reason." *Id*. (internal quotation marks omitted).

Having reviewed the order and underlying record in accordance with that standard, we agree with petitioner's argument that the board's order is not supported by substantial evidence. In particular, we conclude that the order fails to grapple with uncontested testimony describing petitioner's current mental and physical condition and therefore lacks substantial evidence to support the conclusion that petitioner presents a substantial danger given her current condition.

We start with the testimony of Klein, a physician assistant with Cascadia who has worked as petitioner's psychiatric prescriber for the past seven years. The board cited her testimony as part of its reasoning for concluding that petitioner continues to present a substantial danger to others. Klein, however, testified that in her opinion, petitioner does not present a substantial danger to others due to petitioner's inability to ambulate and poor memory. According to Klein, petitioner's physical and mental capabilities have greatly diminished over the seven years that Klein has worked with her, and Klein described how petitioner now

needs assistance with daily tasks like bathing, dressing, and walking.

Regarding the board's concerns about what would happen to petitioner if discharged, Klein testified that petitioner has a county case manager who would work in coordination with Cascadia to find an appropriate dementia care facility. Such facilities, Klein testified, are more limited while petitioner remains under PSRB jurisdiction. And although discharge would mean that petitioner could refuse placement at such a facility, Klein testified that petitioner has not sought to go out on her own. In fact, petitioner is currently free to leave Premier Living when accompanied by staff but has chosen not to do so since 2016.

At the hearing, the board expressed concerns that discharge from its jurisdiction could result in petitioner refusing to take her medication, which helps control schizophrenic symptoms. However, Klein testified that, despite petitioner being unaware of what the medication is for or why she needs it, she takes her medication voluntarily. The medication controls petitioner's schizophrenia, which Klein described as "not active." Klein acknowledged that, if discharged, PSRB would no longer be able to force petitioner to take her medications. In Klein's time working with her, however, petitioner has not been combative, assaultive, or threatening, and she testified that the type of memory care facility that Cascadia would pursue would be secure and have staff that provide medication management.

The other witness to testify was Holden, a mental health program manager at Premier Living, who, at the time of the hearing, had worked with petitioner for over two years. Like Klein, Holden testified that, in her opinion, petitioner does not present a substantial danger to others. Holden testified that any nursing home or facility that petitioner would be transferred to if she were discharged would have standards that monitor and prevent access to dangerous objects or incendiary devices. Holden agreed with Klein that petitioner is not a person who seeks to leave the facility where she is placed. In the past year, Holden accompanied petitioner to the emergency department and, despite being there for only three hours, petitioner was convinced that she

lived there and was not able to recognize that she had been living somewhere else prior to her visit to the emergency department. Holden's testimony also described the significant staff assistance and encouragement petitioner requires just to maintain her hygiene or change her clothes.

As early as 2018, Holden wrote a letter to the PSRB explaining that petitioner's dementia had advanced, that she had not left the facility for several years, that she had no behavioral issues, and that transfer to a nursing or hospice program may be necessary. Petitioner's PSRB status, Holden wrote, would likely make that transfer difficult. In 2020, Holden wrote a second letter, which provided, in part,

> "[Petitioner] has significant issues with her mobility and gait. She walks slowly and holds onto the walls and rails as available. She has significant difficulty in getting to a standing position from lying or sitting. *** If she were to be discharged from PSRB, I believe she would be at very low risk of recidivism due to her unwillingness to leave the program, due to her mobility issues, and due to the decreased influence of her mental illness on her current state. I would support [petitioner] being discharged from supervision under the Psychiatric Security Review Board."

Although the board's order did not reference either letter, both letters from Holden were admitted as exhibits for the board's consideration. The board's order did not specifically address Holden's testimony either. As we understand it, the sum of Klein's and Holden's testimony unequivocally supported petitioner's position that, due to her current mental and physical condition, she does not present a substantial danger to others. The board's order provides no explanation as to why Klein's testimony was cited in favor of continuing jurisdiction or why Holden's testimony was not cited at all.

Finally, when viewed in the context of the entire record, the exhibits cited by the board do not provide substantial evidence that petitioner continues to present a substantial danger to others. Importantly, those exhibits depict petitioner before the decline of her physical and mental abilities. For example, of the exhibits cited by the board's order to support its conclusion that petitioner presents a substantial danger to others, the most recent was a two-page forensic evaluation prepared in early 2015 by Dr. Mohandessi. In that

evaluation, Mohandessi concluded that petitioner's diagnoses of schizophrenia and dementia "are currently active" and that her symptoms "appear to be adequately controlled with medications at this time[.]" He further concluded that, when her symptoms are "not controlled, [petitioner] would represent a danger to others." In reaching his conclusions, however, Mohandessi did not meet or examine petitioner in person; rather, he based his conclusion on an evaluation of petitioner's records including a behavioral health assessment from 2012 and a mental health assessment from 2014.

In short, because none of the exhibits cited by PSRB address petitioner's more recent physical and mental condition, which significantly changed in the years leading up to the PSRB hearing in 2020, we conclude that the order lacks substantial evidence. Indeed, Klein described petitioner as "frail," testifying that "[s]he needs assistance getting up from a chair" and that, when she is ambulating, she either needs a handrail or the assistance of staff. Although the board appeared to be concerned that petitioner have a plan in place before her release from PSRB jurisdiction, ORS 161.351(1) requires the board to release petitioner from jurisdiction if she no longer presents a substantial danger to others. Given the significant change in her physical and mental condition, we conclude that the order denying petitioner discharge is not supported by substantial evidence.

Reversed and remanded.