Argued and submitted April 5, affirmed July 19, 2023

SERVICE EMPLOYEES INTERNATIONAL UNION
LOCAL 503, OREGON PUBLIC EMPLOYEES UNION,
*Respondent,*

*v.*

UNIVERSITY OF OREGON,
*Petitioner.*

Employment Relations Board
UP01417; A177809

534 P3d 736

Respondent, an employer, seeks judicial review of an order of the Employment Relations Board (ERB) concluding, among other points, that respondent violated the Public Employee Collective Bargaining Act in responding to a request for information from petitioner, a union. Specifically, ERB concluded that respondent violated its duty to bargain in good faith with petitioner under ORS 243.672(1)(e) when it withheld from petitioner objective, factual information, including statements by bargaining unit employees concerning workplace complaints. *Held*: ERB did not err. The Court of Appeals understood ERB, in its analysis, to have assumed that respondent had a legitimate and substantial confidentiality interest in the information that it withheld from petitioner but to have concluded that, with respect to objective, factual information, petitioner's interest in the information outweighed respondent's confidentiality interest. The court concluded that ERB's conclusion was not legally erroneous and was supported by substantial evidence and reason.

Affirmed.

Daniel L. Rowan argued the cause for petitioner. Also on the briefs was CDR Labor Law, LLC.

Katelyn S. Oldham argued the cause for respondent. Also on the brief was Oldham Law Office, LLC.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

This case concerns the interplay between an employee's right to informational privacy under the University of Oregon's (the University's) Faculty Records Policy (FRP) and a union's right to obtain information about the working conditions of the employees it represents under the Public Employee Collective Bargaining Act (PECBA), ORS 243.650 to 243.806.

This is the second time this case is before us. In our first opinion, we reversed and remanded an order of Employment Relations Board (ERB) requiring the University to provide Service Employees International Union Local 503 (the Union) access to certain information it had requested. *Service Employees Int'l Union Local 503 v. U of O*, 312 Or App 377, 494 P3d 993 (2021) (*SEIU I*). On remand, ERB was tasked with balancing the University's confidentiality interest in the information against the Union's need for the information. *Id.* at 385-86.

On remand, ERB concluded that the Union's interest in some of the information it had requested outweighed the University's confidentiality interest and that, by "redacting, and thereby withholding from [the Union], objective, factual information, including statements by bargaining unit employees concerning workplace complaints" in response to the Union's request for information, the University violated its duty to bargain in good faith with the Union under ORS 243.672(1)(e).[1]

The University again seeks judicial review. In a single assignment of error, the University argues that "ERB erred in holding that the University's response to the

---

[1] ORS 243.672(1)(e) provides that it is an unfair labor practice for a public employer to "[r]efuse to bargain collectively in good faith with the exclusive representative."

On remand, ERB also concluded that the University violated ORS 243.672 (1)(e), because (1) it "failed to establish that it pursued a good-faith accommodation to reconcile the conflict between the parties' interests" and (2) "the University's communications with the Union regarding the nature of the redacted material were inconsistent with its duty to bargain in good faith." Because we affirm on the basis that ERB did not err in concluding that the University violated ORS 243.672(1)(e) by "redacting, and thereby withholding from the Union, objective, factual information, including statements by bargaining unit employees concerning workplace complaints," we do not reach those other two conclusions.

Union's information request violated the duty to bargain in good faith under ORS 243.672(1)(e)." For the reasons below, we affirm.

## I.   INFORMATION REQUESTS UNDER PECBA AND THE FRP

To properly frame the issues on appeal, prior to turning to the historical facts and our analysis, we briefly discuss information requests under PECBA generally and the University's FRP. That is because, as explained further below, the Union requested certain information pursuant to PECBA, and the University, relying on the FRP, declined to produce that information.

### A.   *An Overview of Information Requests Under PECBA*

Under PECBA, "'[i]t is well-settled that a public employer's obligation to collectively bargain in good faith under ORS 243.672(1)(e) includes the duty to provide an exclusive representative with requested information that has some probable or potential relevance to a grievance or other contractual matter.'" *SEIU I*, 312 Or App at 380-81 (quoting *Service Employees International Union Local 503, Oregon Public Employees Union v. University of Oregon*, Case No. UP-014-17 at 15, 27 PECBR 668 (2018)). That interpretation of PECBA is consistent with the United States Supreme Court's interpretation of the National Labor Relations Act (NLRA) on which PECBA was modeled. *Detroit Edison Co. v. N. L. R. B.*, 440 US 301, 303, 99 S Ct 1123, 59 L Ed 2d 333 (1979) ("The duty to bargain collectively, imposed upon an employer by § 8(a)(5) of the National Labor Relations Act, includes a duty to provide relevant information needed by a labor union for the proper performance of its duties as the employees' bargaining representative." (Footnote omitted.)); *AFSCME Council 75 v. City of Lebanon*, 360 Or 809, 816, 824, 388 P3d 1028 (2017) (noting that "the legislature largely modeled" PECBA after the NLRA, and in enacting PECBA, "the legislature extended to public employees in Oregon the same benefits and protections that federal law had long afforded to employees in the private sector under" the NLRA). The consistency in interpretation is no accident; in the 1970s, ERB adopted "the National Labor Relations

Board's \*\*\* construction \*\*\* [of] the [NLRA] as applied to the [PECBA's] corollary [statutory subsection]—namely, an employer's duty to bargain in good faith includes the duty to furnish information necessary to allow a labor organization to intelligently evaluate and pursue a pending grievance." *American Federation of State, County and Municipal Employees Council 75, Local 189 v. City of Portland*, Case No. UP-046-08 at 2, 26 PECBR 796 (2016) (citing *Oregon State Employes Association v. Children's Services Division, Department of Human Resources, State of Oregon,* Case No. C-32-76, 2 PECBR 900 (1976)).

Once a party requests information under PECBA and makes an initial showing of relevance, ERB considers the "totality of circumstances" to determine the scope and timing of the required disclosure of information. That inquiry is guided by the four factors ERB identified in *Oregon School Employees Association, Chapter 68 v. Colton School District 53*, Case No. C-124-81, 6 PECBR 5027, 5031 (1982) (*Colton*)—namely, "(1) the reason given for the request, (2) the ease or difficulty with which information could have been produced, (3) the type of information requested, and (4) the history of the parties' labor-management relations." *SEIU I*, 312 Or App at 381 (internal quotation marks omitted).

Regarding the first *Colton* factor—the reason for the request—ERB has explained that "[a] request for information relating to a pending grievance ordinarily will require a quicker and more specific response than a request for information that concerns the administration of a collective bargaining agreement generally." *Colton*, 6 PECBR at 5031. The first factor "includes but is not necessarily limited to the requesting party's explanation of the information's relevance." *SEIU I*, 312 Or App at 385. Regarding the second *Colton* factor—the ease or difficulty with which information could have been produced—ERB has explained that "[w]here the material requested already is compiled and printed, a quick response is to be expected," but "[w]here the information must be gathered or be translated into a form usable to the requesting party, the responding party has a reasonable time in which to provide the data." *Colton*, 6 PECBR at 5302. The third *Colton* factor—the type of information requested—includes consideration of whether the requested information

is confidential or otherwise sensitive. *SEIU I*, 312 Or App at 382. The fourth *Colton* factor—the history of the parties' labor-management relations—includes consideration of, for example, whether "there has been a pattern of numerous requests or of apparent 'fish-and-grieve' expeditions" or "a pattern of unreasonable delays in responding to legitimate requests for information." *Colton*, 6 PECBR at 5302.

The primary issue on appeal concerns the third *Colton* factor because, as explained further below, the University's FRP provides that certain information is confidential, including information of the sort that the Union has requested in this case. In assessing the third *Colton* factor, when confidentiality is put at issue by a party responding to a request, that party "must prove *both* a legitimate and substantial confidentiality interest, and that it pursued a good-faith accommodation to reconcile the conflict." *SEIU I*, 312 Or App at 381 (emphasis added).

Ultimately, if the parties' efforts to reach an accommodation to reconcile the conflict are not fruitful, to determine whether the responding party must produce the information notwithstanding its confidential nature, ERB "balances a labor organization's need for information against any legitimate and substantial confidentiality interest established by the employer." *Id.* (internal quotation marks omitted). That approach by ERB is, too, consistent with how information requests are analyzed by federal courts and the National Labor Relations Board (NLRB) under the NLRA when confidentiality is raised. *Piedmont Gardens*, 362 NLRB 1135, 1135 (2015) (noting that, "[u]nder *Detroit Edison*, [440 US 301,] the Board balances the union's need for requested information against any legitimate and substantial confidentiality interests established by the employer"). That body of case law reflects that confidentiality concerns of employers must be given their due, but in pursuit of the important purposes underlying the nation's labor laws, such concerns are sometimes outweighed by the needs of a union.[2] *Compare*

---

[2] In *AFSCME Council 75*, our Supreme Court recognized the similarities in the purposes of PECBA and the NLRA:

"In addition to their nearly identical provisions relating to unfair labor practices, PECBA and the NLRA both express policies of promoting collective bargaining and protecting employees' organizational rights. The NLRA,

*Detroit Edison*, 440 US at 318-20 (determining employer "in resisting an unconsented-to disclosure" of the results of "psychological aptitude testing" did not violate the "statutory obligation to bargain in good faith," and taking judicial notice of "the sensitivity of any human being to disclosure of information that may be taken to bear on his or her basic competence"), *with Midwest Div.-MMC, LLC v. Nat'l Labor Relations Bd.*, 867 F3d 1288, 1300-02 (DC Cir 2017) (concluding that a hospital committed unfair labor practice by refusing to disclose "information about allegations investigated by the [hospital's peer review committee]" because the "information could have substantial relevance to the Union's representation of affected employees" and that interest outweighed the hospital's confidentiality interest as provided by state statute prohibiting disclosure).

That body of case law also provides guidance on what type of information is confidential. Under the NLRA, the NLRB has identified certain types of information that may give rise to an employer's legitimate and substantial confidentiality interest, including "that which would reveal, contrary to promises or reasonable expectations, highly personal information, such as individual medical records or psychological test results; that which would reveal substantial proprietary information, such as trade secrets; that which could reasonably be expected to lead to harassment or retaliation, such as the identity of witnesses; and that

---

for example, declares that it is the policy of the United States to reduce the causes of industrial strife by encouraging collective bargaining and protecting employees' exercise of 'full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.' 29 USC § 151. Similarly, the 1973 Legislative Assembly declared it to be the policy of Oregon that '[t]he people of this state have a fundamental interest in the development of harmonious and cooperative relationships between government and its employees.' ORS 243.656(1). The Oregon legislature also declared that the purposes of PECBA are to 'obligate public employers, public employees and their representatives to enter into collective negotiations with willingness to resolve grievances and disputes relating to employment relations' and to promote improved employer-employee relations 'by providing a uniform basis for recognizing the right of public employees to join organizations of their own choice, and to be represented by such organizations in their employment relations with public employers.' ORS 243.656(5)."

360 Or at 818.

which is traditionally privileged, such as memoranda prepared for pending lawsuits." *N. Indiana Pub. Serv. Co.*, 347 NLRB 210, 211 (2006) (internal quotation marks omitted). Additionally, laws that limit disclosure of certain types of information can give rise to a legitimate and substantial confidentiality interest. *Midwest Div.-MMC, LLC*, 867 F3d at 1300 (discussing privilege created by Kansas statute and noting "[s]tate-law privileges present a valid basis for claiming confidentiality"); *Olean Gen. Hosp.*, 363 NLRB 561, 566 (2015) (recognizing confidentiality interest created by New York statute).

B.   *The University's Confidentiality Interest Under the FRP*

The University's FRP "outlines certain matters pertaining to faculty records," including confidentiality and restrictions on access. It is under the FRP that the University withheld certain information from the Union, asserting that the information was confidential. The FRP was promulgated by the University pursuant to authority granted to it under *former* ORS 351.065, *renumbered as* ORS 352.226,[3] and was formerly codified as an administrative rule.

Under the FRP, *all* "personal records" are "confidential." "Personal records" is defined in the FRP to broadly include *all* records "containing information concerning an academic staff member," other than "Salary Information,"

---

[3] ORS 352.226 provides:

"(1) A governing board as defined in ORS 352.029 may, for the public university under its control, adopt standards and specific orders by or through the president of each public university governing access to personnel records of the public university or office, department or activity that are less than 25 years old.

"(2) Standards adopted under subsection (1) of this section shall require that personnel records be subjected to restrictions on access unless upon a finding by the president of the public university that the public interest in maintaining individual rights to privacy in an adequate educational environment would not suffer by disclosure of such records. Access to such records may be limited to designated classes of information or persons, or to stated times and conditions, or to both, but cannot be limited for records more than 25 years old."

Additionally, ORS 352.087(1)(m) provides that a public university may:

"Establish policies for the organization, administration and development of the university which, to the extent set forth in those policies, shall have the force of law and may be enforced through university procedures that include an opportunity for appeal and in any court of competent jurisdiction."

"Records of Academic Achievement," and "Directory Information."[4]

Further, under the FRP, with some exceptions not relevant here, "personal records" may not be released to any "person or agency without the faculty member's written consent, unless upon receipt of a valid subpoena or other court order or process or as required by valid state or federal laws, rules, regulations, or orders."

## II.  FACTUAL AND PROCEDURAL HISTORY

The University is a public employer as that term is defined by PECBA, ORS 243.650(20). The Union is a labor organization as that term is defined by PECBA, ORS 243.650(13). The Union and the University are parties to a collective bargaining agreement. The Union is the "exclusive representative" of all bargaining unit employees, meaning that it has "the right to be the collective bargaining agent of all employees" in the bargaining unit. ORS 243.650(8).

Employees working at the University and represented by the Union had complaints about the conduct of their manager, D, who was not a part of the bargaining unit. The employees raised those complaints to their union steward (the Steward) who in turn raised those complaints with a human resources manager at the University (the HR Manager)—including complaints that behaviors in the employees' department were "causing employees to feel bullied, disrespected, or sabotaged." As a result, the HR Manager interviewed various University employees, including D and those represented by the Union, and produced a

---

[4] The FRP further specifies:

"Personal records include but are not limited to: Information kept by the University, college, or school, department or division concerning a specifically identifiable faculty member and furnished by the staff member or by others at the University's, college's or school's, department's or division's, or at the staff member's request. Personal records include but are not limited to: information as to discipline, counseling, membership activity, other behavioral records, professional preparation and experience, professional performance (*e.g.*, assignment and work-load, quality of teaching—including records tabulated from students' classroom survey evaluations—research, and service to the institution), personnel data relating to such matters as promotions, tenure, leaves, retirement credits and the like, and professional activities external to the institution, including but not limited to, awards, recognition, research activity, or travel."

"Staff Interview Report," in which the HR Manager summarized what he had learned and made recommendations as to what should be done about it.

After writing the report, the HR Manager met with the Steward and told the Steward that he had written a report about his interviews, that the report noted problems with D's managerial style, and that nothing in the report was damaging to bargaining unit employees.[5] After the Steward learned of the report, he requested that the University provide the Union with a copy. The University provided the Union with a version in which all information concerning the manager, D, had been redacted, including the bargaining unit employees' statements regarding D. When the Union requested an unredacted copy, the University took the position that the redacted portions of the report were covered by the FRP and that the University could not disclose the records without D's consent.[6]

Subsequently, the parties attempted to negotiate the terms of a nondisclosure agreement that would allow the Union access to the unredacted report. When they could not reach an agreement, the Union filed an unfair labor practice complaint against the University.

In resolving the Union's unfair labor practice claim, ERB initially concluded that the University's response to the Union's request for the report violated ORS 243.672(1)(e). Regarding confidentiality, ERB held that, notwithstanding the FRP, the University had failed to prove a legitimate and substantial confidentiality interest in the redacted information, reasoning, in essence, that "although the redacted information is covered by the FRP—that is, confidential under the FRP—[the University] did not establish a legitimate

---

[5] We note that the report contains negative discussion of two bargaining unit employees, stating that they "actively contribute to a toxic work environment," and that one in particular is "incredibly snide to his peers both verbally and through email" and makes "openly hostile comments." Thus, the HR Manager's representation that nothing in the report was "damaging to bargaining unit employees" appears to be inaccurate.

[6] The University's position regarding confidentiality led the Steward to inquire, "Surely it is not the University's position that the Union is not entitled to information about possible mistreatment of employees it represents that is garnered by management from those very same employees. Is it?"

and substantial confidentiality interest in the information, because the FRP expressly allows for the release of confidential information if required by 'valid \*\*\* state law,' PECBA is a valid state law, and PECBA as interpreted by ERB required [the University] to disclose the information." *SEIU I*, 312 Or App at 384.

The University sought judicial review. On judicial review, we reversed and remanded. We noted that, for the purposes of judicial review, with one exception, the University did not contest that the first, second, and fourth *Colton* factors—*i.e.*, the reason given for the request, the ease or difficulty with which information could have been produced, and the history of the parties' labor-management relations, respectively—weighed in favor of disclosure: The Union gave a valid reason for requesting the unredacted report, it would be easy for the University to produce it, and there was nothing in the history of the parties' labor management relations to suggest that the Union was requesting the report for impermissible purposes. *Id.* at 382. Regarding the exception, with regard to the first *Colton* factor, we explained that the University argued that "ERB conflated that factor with the low threshold test for relevance" rather than "truly considering the 'reason given for the request' in assessing the totality of circumstances." *Id.* at 385. We explained that ERB on remand must consider the "the reason given for the request," which "includes but is not necessarily limited to the requesting party's explanation of the information's relevance." *Id.*

Regarding the third *Colton* factor—the factor concerning confidentiality—we explained that ERB's analysis was flawed, because it "relied on improper circular reasoning to conclude that [the University] did not establish a legitimate and substantial confidentiality interest in the redacted information, which in turn led ERB to an erroneous ultimate conclusion that SEIU's need for the unredacted report outweighed [the University's] (nonexistent) confidentiality interest." *Id.* at 384. We remanded to ERB, directing ERB, on remand, to "assess the third *Colton* factor in its own right—including determining whether [the University] established a legitimate and substantial confidentiality

interest in the redacted information—without reference to [an] *ultimate conclusion* that the totality of the circumstances weighs in favor of disclosure under PECBA." *Id.* at 385 (emphasis in original).

On remand, ERB again concluded that the University's response to the Union's request for the report violated ORS 243.672(1)(e).

Regarding the first *Colton* factor, ERB determined that that factor weighed in favor of disclosure. Specifically, ERB determined that the reason for the Steward's request was "self-evident from its context: the Report is directly related to the steward's investigation of the employee complaints that prompted the Report." ERB highlighted that the HR Manager had described the report as identifying "problems with the supervisor's managerial style," which prompted the Steward to ask for a copy of the report.

Regarding the second and fourth *Colton* factors, ERB determined that those factors mitigated in favor of disclosure:

"The second and fourth *Colton* factors are not in dispute: the University could easily produce an unredacted copy of the Report, and the history of the parties' labor-management relations did not indicate improper 'fishing expeditions,' a pattern of numerous requests, or other factors that would weigh against the University's obligation to provide a response to the Union's request."

Regarding the third *Colton* factor—which we understand to be the factor most at issue on appeal—ERB concluded that the report qualified "as a confidential 'personal record'" under the FRP and "recognize[d] that the University has an interest in protecting faculty privacy and upholding the Faculty Records Policy." Nevertheless, it commented that:

"the University has defined as 'confidential' nearly all information about a faculty member, without regard to whether the information is actually private or sensitive. Further, the University provides the same, high level of protection to all information about faculty, regardless of how private or sensitive the information actually is.

> "The University contends that the extensive redactions of the Report were justified because the supervisor felt that some of the employees' statements about him are unflattering and lack proper context. Although we sympathize with the supervisor's desire to avoid disclosure of subordinates' negative or critical statements about his conduct in the workplace, a supervisor's conduct in the workplace is not a private matter. Rather, a supervisor's conduct in the workplace could violate a contract or other legal obligation, and therefore, is subject to examination. That is true under the circumstances of this case, where the supervisor conduct at issue is treatment of subordinate employees, and the party seeking to examine the supervisor's conduct is the employees' exclusive representative."

(Footnote omitted.) ERB further noted that the "redacted material may be divided into two categories: 1) the HR manager's purely subjective, evaluative opinions and recommendations based on what he heard from employees, and 2) the summaries of the bargaining unit employees' statements about the workplace issues under investigation, and any other objective, factual information." It then determined that the FRP gave the University a "legitimate" confidentiality interest, but "questioned" whether the "University has established that it has a substantial confidentiality interest in the summaries of the bargaining unit employees' statements about the workplace issues under investigation, or other objective, factual information," noting that, typically, an "employer's confidentiality interest in subjective statements made by bargaining unit employees is not akin to the employer's confidentiality interest in subjective, evaluative statements made by *the employer*." (Emphasis in ERB's order on remand.)

But in its analysis, ERB ultimately "assume[d] that the University has met its burden to establish that its confidentiality interest is both legitimate and substantial." With regard to "purely subjective, evaluative statements," ERB held that "the University's legitimate and substantial confidentiality interest outweighs the Union's interest in disclosure," and that the University's "redaction of the purely subjective, evaluative statements was consistent with the duty to bargain in good faith." In so holding, it noted that

"disclosure of the HR manager's purely subjective, evaluative statements would not serve the purpose of the Union's request."

It then determined that the "Union's interest in the summaries of the bargaining unit employees' statements, and any other objective, factual information in the Report, is much stronger" and would "serve the purpose of the Union's request—to investigate a potential grievance." Thus, regarding "objective, factual information, including statements by bargaining unit employees concerning workplace complaints," ERB concluded that the Union's interest outweighed the University's confidentiality interest, and, therefore, the University violated (1)(e) by "redacting, and thereby withholding from the Union," that information.

The University now seeks judicial review, contending that ERB erred when it determined that the University committed an unfair labor practice by "redacting, and thereby withholding from [the Union], objective, factual information, including statements by bargaining unit employees concerning workplace complaints."

### III.   STANDARD OF REVIEW

"We review ERB's orders for substantial evidence and errors of law, and to determine whether its analysis comports with substantial reason." *Oregon Tech AAUP v. Oregon Institute of Technology*, 314 Or App 595, 597, 500 P3d 55 (2021), *rev den*, 369 Or 504 (2022). Under the substantial evidence standard, "[d]isputed findings are reviewed to determine whether they are supported by the evidentiary record and whether a reasonable person, viewing the record as a whole, could make those findings." *Haidar v. PSRB*, 324 Or App 129, 132, 524 P3d 986 (2023); *see* ORS 183.482(8)(c) ("Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."). "Substantial reason requires us to review the reasoning that led ERB from those facts to its conclusions and evaluate whether that reasoning reflects a correct interpretation of the law." *Clackamas County Employees' Assn. v. Clackamas County*, 308 Or App 146, 149, 480 P3d 993 (2020).

## IV.   ANALYSIS

As noted, on appeal, the University challenges ERB's determination that the University committed an unfair labor practice by "redacting, and thereby withholding from [the Union], objective, factual information, including statements by bargaining unit employees concerning workplace complaints." The University contends that ERB did not "appropriately weigh the confidentiality of information under the FRP."

In advancing that argument on appeal, the University makes a few principal contentions. Primarily, we understand the University to argue that ERB's order was legally erroneous, because it improperly interpreted the FRP. In the University's view, ERB erred because it improperly "parsed the redacted information into two categories"— subjective information and objective information—and "then assigned those categories different levels of confidentiality," but the FRP does not "divide 'personal records' into different categories with different levels of protection." Specifically, pointing to ERB's statement at a "supervisor's conduct in the workplace is not a private matter," the University contends that ERB effectively disregarded the dictates of the FRP in favor of its own policy views that "conflict[] with the legislative intent regarding the confidentiality of faculty records and the terms of the FRP itself." As the University sees it, a "supervisor's conduct in the workplace is a private matter if the supervisor is covered by the University's FRP." (Emphasis in the University's brief.) At bottom, the University contends that because ERB "incorrectly grafted into the FRP different levels of confidentiality protection based on different types of information (objective vs subjective)," ERB "did not and cannot show that [D's] confidentiality interest was outweighed by the Union's interests."

The University's arguments that ERB did not appropriately weigh the confidentiality of information under the FRP are not persuasive. As we understand ERB's order, it did not "graft into the FRP different levels of confidentiality protection," as the University contends, but it ultimately assumed the University had established a "legitimate and substantial" confidentiality interest in the *entirety* of the

redacted information in the report. It then determined that the "disclosure of the HR manager's purely subjective, evaluative statements would not serve the purpose of the Union's request (to investigate potential contract violations)," so the "the University's legitimate and substantial confidentiality interest outweighs the Union's interest in disclosure." On the other hand, regarding the "the summaries of the bargaining unit employees' statements about the workplace issues under investigation, and any other objective, factual information," ERB determined that "the disclosure of the bargaining unit employees' statements and the other factual information would serve the purpose of the Union's request—to investigate a potential grievance"—the Union has a statutory "duty to investigate potential grievances," and the Union's interest outweighed the University's interest. We note that that approach by ERB—recognizing a general interest in confidentiality—is consistent with the approach taken by the NLRB in evaluating some claims of privilege based on statutes that prohibit disclosure of information but carve out exceptions for when disclosure is required by other statutes. *See, e.g.*, *Olean Gen. Hosp.*, 363 NLRB at 567 (recognizing employer had a "general confidentiality interest" in documents pursuant to state statute and weighing, on the one hand, "the state's general policy against disclosure, which expressly contemplates that covered documents * * * nonetheless may have to be disclosed under other statutory requirements," against union's "clear need for the requested information," on the other).

But even if the University is correct that ERB ascribed more confidentiality weight to some types of information than to other types of information, its contention that ERB erred in that analysis would not be persuasive, because ERB's analysis (and the University's obligations under PECBA) should be informed by the provision in the FRP permitting the University to produce confidential information as "required by valid state or federal laws, rules, regulations, or orders." As explained above, in *SEIU I*, we recognized that that provision of the FRP does not mean that the University lacks a confidentiality interest in material covered by the FRP merely because PECBA is a law that may require disclosure. *SEIU I*, 312 Or App at 384; *see also*

*N. L. R. B. v. US Postal Serv.*, 660 F3d 65, 72 (1st Cir 2011) (holding the "fact that information may be disclosed 'as required by law' does not itself defeat all expectations of privacy, nor does it create an expectation that the information will be disclosed automatically whenever it is relevant to a union"). Nevertheless, that particular provision of the FRP, which is an exception to the FRP's general bar on disclosing confidential information, has meaning—namely, it means that the University's privilege to withhold information afforded by the FRP is not absolute; instead, that privilege is qualified by the competing obligations imposed on the University through other statutory schemes, such as PECBA. Thus, PECBA might require the University to disclose material in which the University has a legitimate and substantial confidentiality interest where the Union's interest in disclosure outweighs the University's interest in confidentiality. *Cf., e.g.*, *Kaleida Health, Inc.*, 356 NLRB 1373, 1379 (2011) (protection from disclosure of certain medical information under New York statute providing that the information shall not be subject to disclosure "except as hereinafter provided or as provided by any other provision of law" was "not absolute" and union's need for the information superseded "the general policy against disclosure" under the statute); *Olean Gen. Hosp.*, 363 NLRB at 567 (same).

As explained above, in determining whether, under the "totality of the circumstances," PECBA requires disclosure of information, ERB must consider the "nature of the information." In our view, with regard to confidential information, consideration of "the nature of the information" can fairly encompass consideration of what the information actually is and whether it is sensitive and private—at least in circumstances where a confidentiality policy operates as broadly as the FRP. Indeed, in some circumstances, to adequately protect an employee's right to privacy as protected by the FRP, ERB must do so, because the contents of personnel records are by no means uniform.[7] *See N. L. R. B. v. Pfizer, Inc.*, 763 F2d 887, 891 (7th Cir 1985) ("While we recognize that employee personnel files often contain sensitive

---

[7] On appeal, the University takes the position that it is "not the University's confidentiality right, it is the confidentiality/privacy right of a person covered by the [FRP] that must be protected."

information, the contents of such records are by no means uniform. Some information contained in personnel files may be completely innocuous while other information could be of the most personal and sensitive nature." (Internal citation omitted.)); *see also, e.g.*, *New Jersey Bell Tel. Co. v. N. L. R. B.*, 720 F2d 789, 791 (3d Cir 1983) (determining "absence and tardiness records are confidential" where "many of the reasons given in the absence and tardiness records are of a highly personal nature" including that "one Company employee suffered from diarrhea for two days, and was absent for an additional five days because in 'treating for hemroids [*sic*] [, the employee] used too hot of water and too much epsom salts, [and] burnt the skin.'" (Brackets in original.)).

Put another way, in determining whether disclosure is required under PECBA, we do not think that ERB is required to treat all confidential information as equally confidential. Rather, in order to properly balance the union's need for the information against the employer's confidentiality interest, it must consider and evaluate the content of the confidential information.

Further, as noted, the University contends that ERB erred in drawing a distinction between "subjective" information and "objective" information. As the University sees it, "a record may contain objective information showing that a person has a medical diagnosis that qualifies as a disability for ADA purposes" and it "cannot be the law that such information about a medical diagnosis is entitled to less privacy protection merely because it is an objective finding, rather than subjective opinion."

But the distinction drawn by ERB *in this case* relates specifically to a report detailing workplace complaints about a supervisor, which, as we understand it, does not contain a medical diagnosis. Although the University may have a point in different circumstances, in the context of the information request in this case, we conclude that ERB's distinction between the employer's thoughts and impressions about a manager (*i.e.*, "the HR manager's purely subjective, evaluative opinions and recommendations based on what he heard from employees") and statements by employees about workplace complaints (*i.e.*, "the summaries of the

bargaining unit employees' statements about the workplace issues under investigation, and any other objective, factual information"), is not legal error. That distinction—between "objective" and "subjective" information—is consistent with ERB precedent, *cf., e.g.*, *Colton*, 6 PECBR at 5031 ("There is no obligation to produce purely subjective, as opposed to objective, information; that is, an explanation of a party's reasoning versus a description of the action the party took and the reason then expressed for the action."); consistent with treatment of other qualified privileges in Oregon, *Meyer v. Oregon Lottery*, 292 Or App 647, 664, 426 P3d 89 (2018) (noting "factual work product is subject to a qualified protection because it is discoverable upon a showing of substantial need and undue hardship, whereas opinion work product—'the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party'—is never discoverable"); and consistent with common law privileges in which keeping certain information confidential is imperative, *see In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Reserve Sys.*, 967 F2d 630, 635 (DC Cir 1992) ("The bank examination privilege, like the deliberative process privilege, shields from discovery only agency opinions or recommendations; it does not protect purely factual material.").

We highlight, however, that in other cases—such as where there is an assertion that an information request would encompass "information showing that a person has a medical diagnosis that qualifies as a disability for ADA purposes" or other, highly sensitive information—the distinction drawn by ERB in this case between "objective" and "subjective" information would paint with too broad a brush; it could encompass information that is both highly sensitive and, in many circumstances, entirely irrelevant.[8]

---

[8] We also note that the University did not submit an unredacted copy of the report for *in camera* review during the evidentiary hearing in this case. For that reason, as ERB noted in its original order, it was difficult to determine the nature of the redacted information. A better practice for accurately assessing confidentiality interests as weighed against a union's need for information might be for the employer to provide the information for *in camera* review (which the University ultimately did during the original remedy phase of this case after it was ordered to do so by ERB to resolve any disputes between the Union and the University regarding redactions).

Finally, the University contends that "ERB's weighing of the confidentiality interest suggests there must be another step where the University looks to whether the information is 'actually' private to determine whether it is confidential under the policy." We disagree. What it does suggest is that, in determining whether PECBA requires disclosure—which includes consideration of the employer's confidentiality interest with regard to information that is undisputedly confidential—ERB can consider what the information actually is, and the University should as well.

In the end, however, we also believe it important to mention that we share some of the University's concerns with aspects of ERB's analysis. As noted, the FRP is a policy promulgated by the University pursuant to authority granted by the Oregon Legislative Assembly under *former* ORS 351.065, *renumbered as* ORS 352.226, in recognition of the legislature's policy that there is a "public interest in maintaining individual rights to privacy" in an educational environment. ORS 352.226(2). That policy is not ERB's to question. If it were the case that ERB gave "confidential information under the FRP virtually no weight"—as the University contends—that would be reversible error. Further, given ERB's statements critical of the breadth of the FRP—*e.g.*, that "a supervisor's conduct in the workplace is not a private matter"—we understand why the University makes the arguments that it does on appeal. Nevertheless, as we understand ERB's order, its ultimate legal analysis rested on the conclusion that, assuming the University had established a substantial confidentiality interest in all of the information protected by the FRP, the Union's interest in some of that information outweighed the University's substantial confidentiality interest.

Having addressed what we understand to be the University's primary arguments—*viz.*, those relating to the contention that ERB's analysis misapplied the FRP in various ways—we address three of the other arguments it makes.

First, the University takes issue with ERB's treatment of the Union's reason for the request—*i.e.*, the first *Colton* factor. In the University's view, ERB's analysis is

not supported by substantial reason, because the Union "said it needed the information to investigate a potential age discrimination claim," but the "report did not discuss age discrimination at all," and, therefore, ERB did not have an accurate understanding of "the Union's interest in the information." As noted, ERB determined that the reason for the Union requesting the report was "self-evident from its context: the Report is directly related to the steward's investigation of the employee complaints that prompted the Report." Although the Union did mention age discrimination, substantial evidence supports a determination that the Union's reason for its request was broader than to just investigate age discrimination, and we reject this contention by the University.[9]

Second, citing ERB's statement in *Colton*, 6 PECBR at 5031, that "[t]here is no obligation to produce confidential information; for example, personnel information protected by statute or notes made during negotiations or grievance investigations," the University argues that "ERB's failure to distinguish the employees' statements in the redacted sections of the report from grievance notes is legal error, because an agency must explain a departure from prior precedent." The University's reliance on ERB's statement in *Colton* that notes from grievance investigations are confidential and, therefore, there is no obligation to produce such notes is inapt. As noted above, ERB has recognized that, in some circumstances, there can be a duty for an employer to produce confidential information, and that duty is also recognized by the FRP.

Third, the University contends that if ERB had conducted "the balancing test with an accurate understanding of the confidentiality interest, it would have concluded that the legitimate and substantial confidentiality interest must prevail over the Union's more nebulous and abstract interest, based on the facts of this case." As noted, the Union is the "exclusive representative" of bargaining unit employees.

---

[9] For example, when negotiating a nondisclosure agreement, the University's lawyer had drafted a provision stating that the Union sought information related to "alleged age discrimination," and the Union's lawyer revised the language to reflect that the Union was seeking information related to "alleged violations of the [collective bargaining agreement]."

As such, it "has the right to be the collective bargaining agent of all employees in an appropriate bargaining unit." ORS 243.650(8). We disagree that a union's interest is "nebulous" or "abstract" where—for purposes of investigating a possible violation of a collective bargaining agreement—it seeks to obtain statements made by union-represented employees to management in the context of a work environment where some employees felt "bullied, disrespected, or sabotaged," and expressed workplace complaints regarding a supervisor.

In sum, we conclude that ERB did not err in concluding that the Union's interest outweighed the University's interest and that, by "redacting, and thereby withholding from [the Union], objective, factual information, including statements by bargaining unit employees concerning workplace complaints" in response to the Union's request for information, the University violated its duty to bargain in good faith with the Union under ORS 243.672(1)(e). ERB's conclusion is not legally erroneous and is supported by substantial evidence and reason.[10]

Affirmed.

---

[10] In our analysis above, we discuss ERB's application of the first and third *Colton* factors, which are the factors most relevant to the issues on appeal. As noted above, the second and fourth *Colton* factors were not in dispute before ERB and militated toward disclosure, because "the University could easily produce an unredacted copy of the Report, and the history of the parties' labor-management relations did not indicate improper 'fishing expeditions,' a pattern of numerous requests, or other factors that would weigh against the University's obligation to provide a response to the Union's request."