NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

NOV 21 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

NATIONAL SURETY CORPORATION,
an Illinois corporation

No. 23-35575

Plaintiff-Appellee,

D.C. No. 3:21-cv-00266-HZ

v.

TIG INSURANCE COMPANY, a
California corporation, FKA Transamerica
Insurance Company,

MEMORANDUM[*]

Defendant-Appellant.

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, Chief District Judge, Presiding

Argued and Submitted October 22, 2024
Portland, Oregon

Before: HAMILTON,[**] VANDYKE, and H.A. THOMAS, Circuit Judges.
Concurrence by Judge HAMILTON.

TIG Insurance Company ("TIG") appeals the district court's order granting

summary judgment and awarding prejudgment interest to National Surety

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable David F. Hamilton, United States Circuit Judge for the
Court of Appeals, 7th Circuit, sitting by designation.

Corporation ("National").  This court reviews de novo a district court's decision granting summary judgment.  *Bank of N.Y. Mellon v. Enchantment at Sunset Bay Condo. Ass'n*, 2 F.4th 1229, 1231 (9th Cir. 2021).  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We affirm in part, reverse in part, and remand.

Both TIG and National issued commercial liability insurance policies that covered a dry cleaner facility which contaminated soil and groundwater.  These two insurers dispute the allocation of the costs incurred after the Oregon Department of Environmental Quality made a claim for costs incurred from the cleanup of the contamination.  Oregon has addressed insurer contribution claims such as these through the Oregon Environmental Cleanup Assistance Act, Or. Rev. Stat. §§ 465.475–485, which governs "insurance coverage disputes involving insureds who face potential liability for their ownership of or roles at polluted sites" in Oregon.  § 465.478.

1.  TIG argues that National's claims are time-barred under Or. Rev. Stat. § 12.080(2), which provides a six-year limitations period.  Under Oregon law, a cause of action for contribution does not accrue until a party has paid a common debt, *see Mansfield v. McReary*, 497 P.2d 654, 657 n.4 (Or. 1972), and each payment made for an environmental cleanup claim gives rise to its own cause of action for contribution.  The district court correctly held that each payment National made triggered a six-year limitations period for that payment alone, and thus National may

seek contribution for payments made on or after March 8, 2014, together with a declaration of the parties' future obligations. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688–89 (9th Cir. 1993).

2. The parties also dispute whether Or. Rev. Stat. § 465.480(5) applies to the apportionment of defense costs, or only the apportionment of indemnity costs. The district court held that § 465.480(5) does not apply to the apportionment of defense costs. That was error. Section 465.480(6) refers to an insurer's obligation to pay "*defense costs* that would be allocated to the insured under subsection (5) of this section." § 465.480(6) (emphasis added). In other words, subsection (6) makes explicit that defense costs are to be apportioned pursuant to subsection (5). Moreover, including defense costs as part of the "covered damages" apportioned under § 465.480(5) is consistent with the remainder of the statute. *See, e.g.*, § 465.480(7).

We remand for the district court to apply in the first instance the § 465.480(5) factors to the apportionment of defense costs. The district court previously apportioned the defense costs according to the insurers' time on risk, finding that policy limits are irrelevant in allocating defense costs in this case. Given the considerable discretion that § 465.480(5) provides the district court in weighing the factors, we do not direct that any specific weight must be applied to any one factor. *See* § 465.480(5)(b). Indeed, as the district court concluded, policy limits may have

little, if any, relevance to the apportionment of defense costs under § 465.480(5), given that the insurers in this case had no overlapping policies and the policy limits do not apply to defense costs.

3. The parties also dispute whether National can obtain contribution for payments made while their 2011 interim cost-sharing agreement was in place. National did not waive its statutory right to contribution through this agreement. The "waiver of a statutory right requires an intentional relinquishment or abandonment of a known right or privilege, which is demonstrated by a clear, unequivocal, and decisive act of the party showing such a purpose[.]" *Portland Fire Fighters' Ass'n v. City of Portland, IAAF Loc. 43*, 518 P.3d 611, 616 (Or. Ct. App. 2022) (internal quotation marks and citations omitted). The 2011 agreement between the parties was an interim agreement and did not clearly or unequivocally reserve or waive rights to seek contribution. We affirm the district court's holding that National could seek contribution for payments made while the parties' interim cost-sharing agreement was in place.

4. The parties finally dispute whether National is entitled to prejudgment interest under Or. Rev. Stat. § 82.010(1) for payments made pursuant to the parties' interim cost-sharing agreement. Section 82.010(1)(a) provides for prejudgment interest on "[a]ll moneys after they become due," § 82.010(1)(a), but the amount due and "the time from which interest should run" must be "readily ascertainable" for a

court to award prejudgment interest. *Patton v. Mut. of Enumclaw Ins. Co.*, 438 P.3d 441, 445 (Or. Ct. App. 2019). To determine whether the amounts are readily ascertainable, courts look "from an objective, post-judgment perspective." *L.H. Morris Elec., Inc. v. Hyundai Semiconductor Am., Inc.*, 125 P.3d 1, 15 (Or. Ct. App. 2005) (quoting *Wilson v. Smurfit Newsprint Corp.*, 107 P.3d 61, 76 (Or. Ct. App. 2005)). The amount owed here was readily ascertainable as of the time of the court's judgment, even though the insurers disputed the proportion that each owed. *See Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1240 (9th Cir. 1998). The district court did not abuse its discretion in awarding prejudgment interest. On remand, the district court may award prejudgment interest based on the apportionment of defense costs after applying § 465.480(5), to the extent those amounts differ from the current judgment.

The district court's judgment is **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**. Each party shall bear its own costs associated with this appeal.

*National Surety Corporation v. TIG Insurance Company*, No. 23-35575

HAMILTON, Circuit Judge, concurring in the judgment:

I agree with much of what is said in the memorandum disposition and concur in the judgment. The district court correctly held under Oregon law that plaintiff National Surety Corporation (NSC) is entitled to seek contribution and prejudgment interest from defendant TIG Insurance Company (TIG) and that the statute of limitations does not bar NSC's claims. The district court erred, however, in one important way in its reading of the Oregon Environmental Cleanup Assistance Act, codified at O.R.S. §§ 465.475–465.485. Defense costs, as well as indemnity costs, must be apportioned under § 465.480(5). On remand, the district court will need to apply subsection (5) to apportion defense costs between NSC and TIG and will then need to recalculate pre- and post-judgment interest. On these points, I agree with my colleagues.

I write separately, however, because the majority's memorandum disposition suggests that the district court might not err on remand by declining to consider policy limits when apportioning defense costs. The memorandum says that policy limits may have "little, if any, relevance to the apportionment of defense costs." Ante at 3–4. With respect, I do not believe that suggestion is an accurate reflection of Oregon law. It also suggests incorrectly that a court handling a contribution claim like this one must do two separate calculations, one to apportion indemnity costs and

another to apportion defense costs. As explained below, giving policy limits little or no weight in allocating defense costs would be inconsistent with the Act and longstanding Oregon case law in both the Oregon courts and this court.

*Lamb-Weston, Inc. v. Oregon Auto. Ins. Co.*, 346 P.2d 643 (Or. 1959) (*Lamb-Weston II*), and its progeny establish that policy limits are relevant under Oregon law when apportioning defense costs as well as indemnity costs. Neither the Act nor decisions of the Oregon courts signal any intent to reject *Lamb-Weston II* or to limit it on the grounds identified by the district court or the majority memorandum. Federal courts should apply O.R.S. § 465.480(5) in a manner that is consistent with this body of law and give substantial weight to both policy limits and "time on risk" when apportioning defense costs.

The Oregon Supreme Court considered how to apportion a common loss between two insurers in the *Lamb-Weston* case. The case was a contribution action between two insurers who were each fully liable for their co-insured's liabilities from a car accident. Both policies included "other insurance" clauses that sought to limit or eliminate the insurer's liability based on the availability of other insurance policies to cover part or all of the losses. The Oregon Supreme Court held in its first opinion that such conflicting "other insurance" clauses in policies covering the same risk are mutually repugnant and without effect. *Lamb-Weston, Inc. v. Oregon Auto. Ins. Co.*, 341 P.2d 118–19 (Or. 1959) (*Lamb-Weston I*). Instead of deciding which

2                                                                                          23-35575

policy should "yield to the provisions of the other," the court allocated the loss between the insurers equally. *Id.* at 118–19. On rehearing, the Oregon Supreme Court refined its approach to apportionment, holding in *Lamb-Weston II*, that a common loss between two insurers should be prorated in proportion to each insurer's applicable policy limit. 346 P.2d at 646.

Oregon courts continue to cite and apply *Lamb-Weston*. E.g., *Oregon Mutual Ins. Co. v. Those Certain Underwriters at Lloyd's London Subscribing to Policy Number OROAKG2-CNE*, 437 P.3d 232, 234 (Or. Ct. App. 2019), even though such common law rules are technically preempted in cases governed by the Act. See O.R.S. § 465.480(4)(d). In this case, however, the district court concluded that the *Lamb-Weston* rule was not relevant to its apportionment of defense costs on three grounds, writing that *Lamb-Weston* "does not address defense costs, the two insurers simultaneously provided coverage to the insured, and the incident happened at a single identifiable point in time." Those differences might be relevant in other states, but not Oregon. They do not offer a persuasive reason to depart from *Lamb-Weston* by assigning policy limits little or no weight when allocating defense costs under the Act.

First, although *Lamb-Weston* and its progeny involved concurrent coverage of discrete incidents, the Oregon Supreme Court's reasons for adopting the *Lamb-Weston* rule cannot be limited to those facts, nor have the Oregon courts suggested

the rule is so limited. The Oregon Supreme Court adopted the *Lamb-Weston* rule as an application of the general principle, stemming from the Old Testament and centuries of admiralty law, that a common loss should be shared in proportion to the benefit that each party received from the activity leading to the loss. *Lamb-Weston II*, 346 P.2d at 646 (identifying, as the "controlling principle: when there is a loss which should be shared, the respective shares will be determined by considering the benefits which accrued to the contributors"). This principle is justified by the need to prevent unjust enrichment. *Id.* at 644 (explaining that pro rata contribution "can easily be justified on an unjust enrichment basis"). *Lamb-Weston* uses policy limits as a proxy for premiums, which are the benefits that insurers receive under an insurance contract. *Id.* at 647 (explaining that "the burden imposed on each insurer is generally proportional to the benefit which he received, since the size of the premium is most always directly related to the size of the policy").

Because the *Lamb-Weston* rule apportions a common loss to avoid unjust enrichment, Oregon courts apply it whenever a party has a right to equitable contribution. Although insurers with concurrent coverage of a discrete event share a common loss, a common loss can also exist based on other facts. In this case, under the Act, both TIG and NSC are fully liable for all of the defense and indemnity costs arising out of their co-insured's claim, subject to the applicable limits of each

policy. See O.R.S. § 465.480(3). They have a shared loss triggering the right to contribution even though they are successive insurers.

Second, and perhaps most important, Oregon itself extends the *Lamb-Weston* rule *to defense costs*. *Burnett v. Western Pacific Ins. Co.*, 469 P.2d 602, 606 (Or. 1970) ("[T]he costs of defense should be governed by the same rule as the rest of the loss and should be prorated."). *Burnett* was a logical extension of *Lamb-Weston*'s rule and reasoning. It is rational to apportion defense costs according to the benefit each insurer received for taking on the duty to defend. "The insurer who stands to bear the greater proportion of the loss will be benefited the most by a successful defense." *Id.* Other Oregon courts and this court have followed *Burnett* and used the *Lamb-Weston* rule to apportion defense costs. See *Forest Industries Ins. Exchange v. Viking Ins. Co.*, 728 P.2d 943, 946 (Or. Ct. App. 1986) (applying *Lamb-Weston* rule and prorating attorney fees according to "the total amount each insurer had at risk"); *General Acc. Fire & Life Assur. Corp. v. Continental Cas. Co.*, 287 F.2d 464, 468 (9th Cir. 1961) ("In neither of these Oregon decisions did the court deal specifically with the question of contribution as to the expenses of defending a damage suit. Yet the reasoning of the court in its opinion on rehearing strongly points in the direction of proration as to suit expenses as well as of damages paid."); *Oregon Auto. Ins. Co. v. United States Fidelity and Guar. Co.*, 195 F.2d 958, 960 (9th Cir.

1952) (anticipating *Lamb-Weston* rule and prorating defense costs "in proportion to the amount of insurance provided by their respective policies").

Both the district court and the majority's memorandum emphasize that policy limits do not apply to defense costs. That fact does not necessarily undermine the logic of the *Lamb-Weston* rule, and in any event, Oregon courts have not limited *Lamb-Weston* on that basis.[1] Premiums account for an insurer's exposure to both defense and indemnity costs and thus are relevant to the apportionment of both kinds of costs. *See Continental Cas. Co.*, 287 F.2d at 468 ("The premiums which each had received, which the court assumed to be roughly related to the applicable policy limits, were intended to compensate not only for the damage risk assumed but also for the expense of defeating or minimizing damage claims. It follows that if a comparison of policy limits is an equitable basis for prorating damage liability, it

---

[1] In general, policy limits do not bear directly on a liability insurer's duty to defend. Under most liability policies, however, "exhaustion of the policy limits . . . extinguishes an insurer's duty to defend." *Siltronic Corp. v. Employers Ins. Co. of Wausau*, No. 3:11-cv-1493, 2015 WL 13675133, at *7 (D. Or. Sept. 2, 2015). In this case, NSC's and TIG's policies provide that their duties to defend end once the insured reaches their respective policy limits for indemnity costs. As a result, two insurers with co-extensive duties to defend may still have different degrees of exposure to defense costs. This interaction between policy limits and the duty to defend creates incentives relevant in contribution actions between co-insurers. See *Siltronic Corp. v. Employers Ins. Co. of Wausau*, 176 F. Supp. 3d 1033, 1040 (D. Or. 2016) (explaining that the scale of defense costs in environmental remediation claims gives insurers incentives to meet policy limits as soon as possible to limit ongoing defense obligations).

provides like justification for a similar proration of suit expenses."). Because the *Lamb-Weston* rule uses policy limits as a proxy for premiums, see *Lamb-Weston II*, 346 P.2d at 647, policy limits are relevant to apportionment of both kinds of costs. Furthermore, in each of the cases in which Oregon courts or the Ninth Circuit applied the *Lamb-Weston* rule to defense costs, as in this case, policy limits did not cap either insurer's liability for defense costs. Oregon courts have not refused to apply the *Lamb-Weston* rule to defense costs on this basis, so federal courts applying Oregon law should follow their lead.

To see why Oregon's rule makes sense, imagine a simple hypothetical: two insurers issue successive one-year commercial general liability policies to a business that is later found to be liable for environmental contamination occurring during those two years. Under the policies, both insurers have an unlimited duty to defend, but one policy caps indemnity costs at $900,000 and the other caps indemnity costs at $100,000. The insurer with a policy limit of $900,000 will have received a much bigger benefit—i.e., a bigger premium—for covering the same risk as the insurer with a policy limit of $100,000. If time on risk were the only significant factor, the two insurers would split defense costs 50/50 even though one received a much larger premium, perhaps nine times larger. As a result, the insurer with a smaller policy limit would receive a smaller premium without benefiting from its lower policy

limit.[2] Meanwhile, the insurer with a higher policy limit would have kept the benefit of its larger premium while shifting more of the defense burden to the other insurer. Declining to give policy limits any weight in apportioning defense costs thus risks unjustly enriching insurers with larger policy limits.

The risk of unjust enrichment is especially high in environmental cleanup cases like this one. In other insurance disputes, indemnity costs often exceed defense costs. As a result, the insurer with a higher policy limit receives a larger premium (benefit) but is also liable for a greater share of the insured's loss (burden). In an environmental cleanup case, the opposite may be true. "In these actions, unlike more typical disputes, defense costs might easily exceed the amounts that were within the reasonable expectation of an insurer and its insured when the policy was purchased." *Siltronic Corp. v. Employers Ins. Co. of Wausau*, 176 F. Supp. 3d 1033, 1040 (D. Or. 2016), quoting *Evraz Or. Steel Mills, Inc. v. Cont'l Ins. Co.*, No. CV 08–447–JE, 2009 WL 789658, at *14 (D. Or. Mar. 20, 2009). The mismatch between benefit

---

[2] Subsection (5) directs a judge apportioning costs in this scenario to consider both policy limits and time on risk. As a result, the split may be neither 50/50 nor 90/10, but somewhere in between. Of course, real environmental cases are endlessly more complex than this simple hypothetical. Subsection (5) sets out the factors courts must consider but does not set out a particular formula. It gives courts discretion in crafting an allocation that accounts for all the factual complexities and relevant subsection (5) factors in a given case. See *Northwest Pipe Co. v. RLI Ins. Co.* (*Northwest Pipe III*), 649 F. App'x 643, 645-46 (9th Cir. 2016) (reviewing weighing of factors under O.R.S. § 465.480(5) for abuse of discretion).

received and burden incurred can be even higher than usual for an insurer with a low policy limit.

None of this is to say that the *Lamb-Weston* rule is the only rational way to apportion defense costs incurred when cleaning up environmental damage. As the district court wrote, many courts have concluded that time on risk is the most equitable method of allocation under these circumstances. *National Surety Corp. v. TIG Insurance Co.*, No. 3:21-cv-00266, 2022 WL 16694733, at *4 (D. Or. Nov. 2, 2022), citing *Century Indem. Co. v. Liberty Mut. Ins. Co.*, 815 F. Supp. 2d 508, 518-19 (D.R.I. 2011) (time-on-risk method of allocation limits defense costs "to the slice of progressive injury that providers choose to insure, which, in turn, advances the public policy goals of reducing underwriting uncertainty and lowering premiums for consumers"); see also, e.g., *Towns v. Northern Sec. Ins. Co.*, 2008 VT 98, ¶¶ 35–36, 184 Vt. 322, 964 A.2d 1150 (2008) (time-on-risk method of allocating defense and indemnity costs preferable because "its inherent simplicity promotes predictability, reduces incentives to litigate, and ultimately reduces premium rates" (internal quotation marks and alteration omitted) (quoting Comment, *Allocating Progressive Injury Liability Among Successive Insurance Policies*, 64 U. Chi. L. Rev. 257, 276 (1997))); *Public Service Co. of Colorado v. Wallis & Cos.*, 986 P.2d 924, 939–41 (Colo. 1999) (adopting time-on-risk method of allocating defense costs incurred for environmental cleanup activities between successive insurers); *Insurance Co. of*

*North America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1224–25 (6th Cir. 1980) (applying Illinois and New Jersey law and adopting time-on-risk method to allocate defense costs incurred in asbestos products liability litigation).[3]

A pure time-on-risk approach is another reasonable solution to the problem, but it is not Oregon's solution. As this court has recognized, in Oregon, "equitable considerations outweigh the somewhat technical considerations which have led to a different result in the cited cases involving the law of other states." *Continental Cas. Co.*, 287 F.2d at 468 (explaining why court applied *Lamb-Weston* rule to defense costs). Oregon courts have decided that insurers who received a bigger premium in exchange for issuing a higher policy limit should be on the hook for a greater share of a common loss, including defense costs. Apportioning defense costs based on time on risk alone does not effectuate that policy.

---

[3] The district court said here it was applying the "majority position" on apportioning defense costs. As an empirical matter, that is far from clear. To support the proposition, the district court cited *Century Indem. Co. v. Liberty Mut. Ins. Co.*, 815 F. Supp. 2d 508, 518 (D.R.I. 2011), which in turn cited a 1999 district court case that focused on New York law and did not conduct a systematic survey. See *U.S. Fidelity & Guaranty Co. v. Treadwell Corp.*, 58 F. Supp. 2d 77, 105 (S.D.N.Y. 1999) (citing six cases applying New York law, one case applying Texas law and one case applying Minnesota law for the position that "the time-on-the-risk method has been applied by the vast majority of courts allocating liability"). For a 50-state survey of decisions focusing on allocation methodology, see Scott M. Seaman & Jason R. Schulze, *Appendix A. 50 State Survey of Allocation Decisions*, *in* Allocation of Losses in Complex Insurance Coverage Claims (12th ed. 2024). Determining the majority position is complicated by the existence of different underlying legal regimes between jurisdictions and conflicting decisions in many jurisdictions.

The Oregon legislature has not signaled any intention to reject that policy in environmental cleanup cases governed by the Act. To the contrary, the Act codifies the first part of the *Lamb-Weston* rule regarding competing "other insurance" clauses. See O.R.S. § 465.480(3)(a) (nullifying conflicting "other insurances" clauses in policies covering the same environmental claim). Like subsection (3), subsection (5) is consistent with *Lamb-Weston.* Subsection (5) expressly directs courts to consider policy limits *and* time on risk, along with two other factors, when apportioning defense costs. Subsection (5) departs from the *Lamb-Weston* rule by adding new considerations to the mix, but it does not eliminate the established relevance of policy limits in apportionment of defense costs.

There is also a practical dimension to giving meaningful weight to policy limits under the Act. Everyone agrees that district courts should consider policy limits when apportioning indemnity costs between insurers. It can be hard enough to calculate one fair apportionment formula in a complex insurance dispute over environmental clean-up. Does the court really need to calculate two formulas, one for indemnity costs and another for defense costs, as the majority memorandum implies? Nothing in § 465.480 suggests that district courts must or should perform two different calculations for defense and indemnity costs. When the Oregon legislature wanted courts to treat defense and indemnity costs differently, it said so

explicitly. See O.R.S. § 465.480(6) (authorizing insurers to refuse to pay defense costs, but not indemnity costs, under certain circumstances).

As a federal court applying state law, our job is to use our "best judgment in predicting how [Oregon's] highest court would decide the case." *Fast Trak Investment Co., LLC v. Sax*, 962 F.3d 455, 465 (9th Cir. 2020), quoting *Fiorito Bros., Inc. v. Fruehauf Corp.*, 747 F.2d 1309, 1314 (9th Cir. 1984). In making this prediction we "must ascertain from all available data what the state law is and apply it." *Id.*, citing *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982). The best "available data" on this question is *Lamb-Weston II* and its progeny, not decisions of other district courts in the Ninth Circuit or other jurisdictions—both of which the district court here, and some other district court decisions in Oregon, have given more weight than *Lamb-Weston II*. The Oregon Supreme Court and legislature have stuck with the logic of *Lamb-Weston II*. Until Oregon changes course, federal courts applying Oregon law should follow their lead by giving policy limits meaningful weight when apportioning defense costs.